## THE CITY OF TOPEKA v. LEWIS SELLS.

STREET—*Change of Grade—Damages—Rights of Property-Owner.* If a city of the first class desires to confine a property-owner whose buildings have been damaged by a change of the established grade of a street, to the statutory remedy of an appeal from the award of the appraisers, the city authorities must proceed in substantial compliance with § 18 of the law governing cities of the first class; and if they fail to do so, or so act as to induce the property-owner to believe that he will not be damaged, and it transpires, after the expiration of the time within which he can take an appeal, that his property is damaged, he can maintain an action for damages, the statute making the city liable therefor in express terms.

### *Error from Shawnee District Court.*

ACTION by *Sells* against the *City* to recover damages to lots 75 and 77 on Kansas avenue, in the city of Topeka, caused by changing the grade of the street. Judgment for the plaintiff, on December 15, 1888, for $1,200. The defendant brings error. The material facts are stated in the opinion.

*S. B. Isenhart,* city attorney, for plaintiff in error.

*A. Bergen,* for defendant in error.

Opinion by SIMPSON, C.: This is an action by Sells against the city of Topeka to recover damages to property, occasioned by a change of a grade on Kansas avenue. Sells owns lots 75 and 77 on said street, and improved the same by the construction of two large brick store buildings. The property is situated on the west side of Kansas avenue, between Third and Fourth streets. Before he commenced the erection of these buildings, he took great precaution to have them built to conform to the grade of the street, as they were designed for business purposes. Similar precautions were also taken about the construction of a sidewalk, composed of broken stone and asphalt. These buildings and sidewalks were constructed in 1883 or 1884. On March 1, 1886, an ordinance was passed, the material parts of which are as follows:

"AN ORDINANCE establishing the grades of certain streets and avenues and repealing ordinances Nos. 198, 215, 251, 315, and 338.

"*Be it ordained by the Mayor and Councilmen of the City of Topeka:*

"SECTION 1. That the grades of the several streets and parts of streets hereinafter mentioned are hereby established as specified in this ordinance.

"SEC. 2. That the figures herein named indicate the height of grade elevations of the respective block corners, as noted by the points of orientation at the intersection of streets, in feet or tenths of feet above the city datum.

"SEC. 3. That the grade along the line of the block shall be a straight line from any given named point to the next nearest named point."

. . . . . . . . . . .

"SEC. 8. That the grade elevations at the corners of the intersection of Third street with several cross streets shall be as follows:

. . . . . . . . . .

"Kansas avenue, N. E., 47.0; S. E., 49.5; S. W., 50.6; N. W., 48.2."

In due time a notice of appraisement was given, and it stated:

"The following shows the elevation of grade under the proposed ordinance, the cut or fill to be made as provided for

under the proposed ordinance, and the cut or fill in the established grade as it now exists at each respective block corner within the above-described territory.

PROPOSED ORDINANCE CUT OR FILL.

| *Intersection on Third Street.* | *Elevation.* | *New.* | *Old.* |
|---|---|---|---|
| With the N. E. corner of Kansas avenue, | 26.4 | Fill 0.1 | Cut 2.5 |
| "    "   S. E.    "    "    "    " | 28.4 | "    0.2 | "    3.2 |
| "    "   S. W.   "    "    "    " | 28.4 | "    0.1 | "    3.3 |
| "    "   N. W.   "    "    "    " | 26.4 | "    0.0 | "    2.6 |
| *Intersection on Fourth Street.* | | | |
| With the N. E. corner of Kansas avenue, | 47.0 | Fill 0.1 | Fill 1.3 |
| "    "   S. E.    "    "    "    " | 49.5 | Cut 1.7 | Cut 1.7 |
| "    "   S. W.   "    "    "    " | 50.6 | Fill 0.4 | Cut 0.7 |
| "    "   N. W.   "    "    "    " | 48.2 | "    0.2 | Fill 0.2" |

By this notice it would appear, that at the two points mentioned in the notice nearest to and in a straight line with Mr. Sells's building there was proposed to be, at the nearest point on the south, viz., the northwest corner of Kansas avenue and Fourth street, a fill upon, or raising of, the established grade, of $\frac{2}{10}$ of a foot, or $2\frac{1}{3}$ inches, and at the nearest point on the north, to wit, the southwest corner of Kansas avenue and Third street, a fill of $\frac{1}{10}$ of a foot, or $1\frac{1}{5}$ inches. By the ordinance it was provided:

"SEC. 3. That the grade along the line of the block shall be a straight line from any given named point to the next nearest named point."

It will be seen by the notice given that the grade in front of Sells's property was not to be lowered below the established grade at the time he built, but, on the contrary, it would be raised between $\frac{1}{10}$ of a foot and $\frac{2}{10}$ of a foot along the entire line between Third and Fourth streets. The jury, in response to a question submitted to them at the request of the city, specially found that the grade was lowered in front of Sells's premises about 18 inches. A verdict was returned and a judgment rendered in favor of Sells for $1,200. A motion for a new trial was overruled, and all exceptions saved necessary to raise the questions discussed in this court.

The law governing cities of the first class provides:

"SEC. 18. The mayor and council shall have the power to

establish by ordinance the grade of any street, alley, lane or avenue within the city; and when the grade of any street, alley, lane or avenue shall have been so established, or shall have been heretofore established and the grade thereof accepted by the council, such grade shall not be changed until declared necessary by a resolution by a three-fourths vote of all the council elected, and not then until the damage to property-owners, which may be caused by such change of grade, shall have been assessed by three disinterested appraisers, who shall be appointed by the mayor with the consent of the council for that purpose, who shall make such appraisement and file their report under oath with the city clerk, within twenty days after receiving notice of their appointment from the city clerk; and the city clerk shall give notice to interested property-owners by publication in the official paper of the city for at least ten days prior to the assessment of damages, which notice shall specify the names of the appraisers, the time when they will meet to make such appraisement, and the name of the street between the points wherein such change of grade is to be made, and the amount of damages so assessed shall be deposited with the city treasurer, subject to the order of said property-owner or owners, or their agent or agents, before any such change of grade shall be made; and any person feeling himself aggrieved by such amount of damages may appeal therefrom within 10 days after confirmation of said report by the council, by serving a written notice upon the mayor, or in his absence the acting mayor, or in his absence the city clerk, of such intention to appeal to the district court, and by executing a bond to the city, conditioned to faithfully prosecute such appeal to a final determination thereof, and to pay all costs so incurred in case such appellant does not recover a judgment greater than the damages awarded by said appraisers. The taking of such appeal shall not operate in any manner to prevent the change of said grade; and the cost and expense of changing the grade of said street and grading the same shall be paid by the city."

The principal contention of the city in this court is, that this action at law cannot be maintained; that Sells's only remedy was an appeal from the award of the appraisers. This contention is based upon well-considered cases that hold "that if a statute gives a right to compensation for damages

for which no remedy before existed, and a remedy is provided to which the party injured may resort, that remedy is exclusive." It is said that this rule applies to this case; that the law governing cities of the first class gives a remedy where none existed before; that before the passage of this law no damages could be recovered in this state for a change of the grade of a street, and that now the only remedy is by an appeal from the award of the appraisers.

We propose first to consider the nature and extent of the liability imposed by law on cities of the first class for damages in cases of this character. Paragraph 562 of the General Statutes provides, that after a grade has been established it shall not be changed until declared necessary by resolution by a three-fourths vote of all the council elected, and not then until the damage to property-owners which may be caused by such change of grade shall have been assessed by three disinterested property-holders, etc. The statute provides for notice to be given to all property-owners of the time and place of the meeting of the appraisers, and gives a party aggrieved the right of appeal. In plain terms, the duty is cast upon the city of making a proper appraisement of damages. It seems, by the language of the section, that the proper performance of such duty is a condition precedent to the exercise of the right to change the grade. Hence, in the performance of such duty, the city must substantially conform to all the requirements of the law in this respect, because the doctrine may be considered established, that—

"Where a duty is a corporate one, that is, one which rests upon the municipality in respect of its special or local interests, and not as a public agency, and is absolute and perfect, and not discretionary or judicial in its nature, and is one owing to the plaintiff, or in the performance of which he is specially interested, that the corporation is liable in a civil action for the damages resulting to individuals by its neglect to perform its duty." (2 Dill. Mun. Corp., 4th ed., § 980, and authorities cited.)

This statute imposes such a liability on the city of Topeka

when it changes an established grade.  If in such an attempt the city authorities fairly comply with all the obligations and requirements of the law with respect to the appraisement of damages, we agree with counsel for the city that in such an event the only remedy of the aggrieved property-owner is by an appeal from the award.  Notice to the owner is of the essence of all proceedings affecting property, and the vital complaint here is that the notice given to Sells did not inform him that the proposed change of the grade of the street in front of his property was to be lowered, but did acquaint him with the fact that it was to be slightly raised, and this was in effect a notice to him that his property would not be materially injured by such change.  When the change was made, however, and the street made to conform thereto, it was found that the street in front of his buildings was lowered 18 inches.  The city therefore did not give him notice of what it intended to do, nor did the city authorities conform to the terms of the notice given.  Appraisers were appointed to assess the damages, and they acted in accordance with the terms of the notice, and in their report say that on the west side of Kansas avenue south from the corner of Fourth street "the proposed grade will conform to existing improvements," and report no damages.  So that it is plain that the question of the amount of damages to the property of Sells by lowering the grade of the street in front of his buildings about 18 inches was never submitted to the appraisement required by the statute, or ever entered the minds of the appraisers, and that this was caused by the neglect of the city authorities, or by their arbitrary change after the report of the appraisers had been made.  In any event, Sells had no notice or intimation that so injurious a change of grade was either contemplated or was to be made until work on the street began to indicate the extent of the alteration in the grade.  The controlling question, therefore, in this case is, has there been such an omission of duty upon the part of the city, by reason of these things, as will make it liable in a common-law action, such as this, for damages to the property of Sells?  There are many well-considered cases

that so hold. Among them is the case of *Healey v. City of New Haven*, 49 Conn. 394, which says:

"A question is made whether the defendant is liable in this form of action. The statute in terms makes the city liable for the damages, 'to be ascertained in the manner provided for ascertaining damages done by laying out or altering highways therein.' The defendant contends that when a statute creates a right and gives a remedy, that remedy alone must be resorted to. The principle invoked is more especially applicable to cases where the statute makes an act lawful in itself unlawful; but it is not applicable to this case, for the reason that the statute gives the plaintiff no remedy. It simply points out a method by which the city may ascertain the amount of damages.

"The charter (Special Laws, vol. 6, p. 486, § 28) provides that damages in cases of laying out or altering highways shall be assessed by the board of compensation or by the common council. Section 30 provides that the sum assessed shall be paid to the land-owner, or, if he refuses to receive it, shall be deposited for him in the city treasury. In all this the city must clearly take the initiative. It is its duty to move in the matter. Now, suppose it does move; and, having ascertained the damages, refuses to pay: what remedy has the plaintiff? The statutes being silent, the law supplies the remedy. There is certainly no occasion to resort to a *mandamus*, for nothing remains to be done but to pay the money. But suppose the city refuses to have the damages assessed, as in this case: what then is the remedy? The defendant answers, 'a *mandamus*.' Not necessarily. That writ lies only when there is no other remedy. We think an action for the damages is a more direct, more complete and less expensive remedy. The proceeding by assessment is not a remedy for the plaintiff. He cannot institute it nor control it; and if instituted by the city he cannot compel its continuance. It was in no sense designed for his benefit, but is rather in the nature of a proceeding against him, or against his property *in rem*.

"The constitution prohibits the taking of private property for public use without compensation. It being necessary to take private lands for highways, this proceeding was designed as an expeditious and inexpensive method of ascertaining the damages to be paid. The theory is, that the damages shall be ascertained and paid before the land is taken. But the city cannot escape responsibility by omitting

this proceeding and taking the land in the first instance. Should it attempt to do so, it would be no answer to a suit that the statute makes provision for ascertaining the damages. In such a case the plaintiff would hardly be required to resort to a *mandamus*. The statute provides the same remedy for both cases, the original taking of the land, and the subsequent damage to the adjoining land by changing the grade, not for the land-owner, but for the party taking the land or doing the damage. The cases are analogous, the only difference being that in Connecticut the damages in the latter case, in the absence of a statute to the contrary, are presumed to have been estimated and paid when the land was originally taken. The cases are so nearly alike that the same principle should apply to both.

"The city may and should resort to the statutory mode of assessing damages in all instances, and its failure to do so will be no defense. If it takes land or makes improvements, thereby causing damage where damages are provided for, without complying with the statute, its proceedings are unlawful. It cannot with good grace turn the plaintiff out of court and say to him, you ought to have resorted to a *mandamus* to compel us to do our duty.

"If a recovery in this section results injuriously to the city it is not through any fault of the plaintiff. But it is not certain that it need be so. There is no difficulty in estimating damages, deducting the benefits; and•we do not now see that this suit will of itself prevent the city from assessing damages and benefits in respect to other parties. Of course the city cannot be deprived of its right to resort to the statutory proceeding without its consent; but having waived that right, as it has in this case, it cannot complain of an ordinary action at law. A new trial is advised."

In the case of *City of Elgin v. Eaton*, 83 Ill. 535, the court says:

"In this case the city entered upon the improvement of the street after the adoption of our present constitution, and before the passage of our eminent-domain law. The rights of the parties were then fixed, and cannot be altered by subsequent legislation, and the right to recover damages was given by the constitution; and inasmuch as the city failed to have them assessed as they might have been under the eminent-domain law, then in force, the action will lie for their recovery. (See *The People v. McRoberts*, 62 Ill. 38.) Failing to pro-

vide compensation for the damages, the city became liable to an action. (*Clayburgh v. City of Chicago*, 25 Ill. 535.) The failure to have the damages ascertained, if there were any, and provide the means to pay the same, was an omission of duty which rendered the body liable to an action."

*City of Lafayette v. Wortman*, 107 Ind. 404, construes a section of the Indiana statute very similar to ours, and says:

"Counsel for the city, the appellant here, makes the point that, upon the facts stated, the appellee might have enjoined the common council from proceeding with the change of grade, and the improvements complained of, until his damages were assessed and paid, but that having waived his right to so enjoin the common council, his only remaining remedy is a resort to the writ of *mandamus* to compel the city to have his damages assessed under the statute having relation to the government of cities, citing the cases of *Trustees v. Mayor*, 33 N. J. L. 13, and *Macy v. City of Indianapolis*, 17 Ind. 267, and that consequently the demurrer to the complaint ought to have been sustained.

"In response to the point thus made, it is argued that the complaint was in form, as well as in legal effect, only a demand for consequential damages resulting from the negligent, unskillful and unmechanical manner in which the improvements in question were made, citing the cases of *City of Logansport v. Wright*, 25 Ind. 512; *City of Indianapolis v. Huffer*, 30 id. 235; *Weis v. City of Madison*, 75 id. 241 (39 Am. Rep. 135); *City of Evansville v. Decker*, 84 Ind. 325 (43 Am. Rep. 86); *Town of Princeton v. Gieske*, 93 Ind. 102; *City of Crawfordsville v. Bond*, 96 id. 236; and other cases bearing on the same general question of the liability of cities for damages caused by negligent and unskillful street improvements.

"The non-liability of cities for injuries and inconveniences to the owners of property as a consequence of improvements made upon, and changes in the grade of, their streets and alleys, when the law providing for such improvements and changes has been fairly complied with, continues to be substantially as it was when the case of *Macy v. City of Indianapolis*, supra, was decided, but since that time a clause has been attached to one of the sections of the statute defining the power and duties of cities, in the following words: '*Provided*, That when the city authorities have once established the grade of any street or alley in the city, such grade shall not be changed

until the damages occasioned by such change shall have been assessed and tendered to the parties injured or affected by such change, and such damages shall be collected by the city from the party or parties asking such change of grade in the manner provided for the collection of street improvements.' (Rev. St. 1881, § 3073.) The cities of the state consequently have not now, and since the enactment of this provision have not had, the lawful right to change the grade of a street or alley which has once been regularly established, without first having the damages which will result to adjacent property-holders assessed and tendered. (*City of Logansport v. Pollard,* 50 Ind. 151; *City of Kokomo v. Mahan,* 100 id. 242; *Mattingly v. City of Plymouth,* 100 id. 545.)

"It follows that the change of the established grade of a street or alley by a city, without first having the prospective damages assessed and tendered, has become an unlawful act, an affirmative wrong, or misfeasance, for which damages may be recovered by any party whose property may thereby be injured."

The case of *Noyes v. Town of Mason City,* 53 Iowa, 418, is a strong one in this direction. It reads:

"The remaining grounds of demurrer in various forms present the question whether this action can be maintained, there being as claimed by the appellee a statutory remedy which should have been followed. If this last proposition is true, that is, if there is a statutory remedy, it will be conceded this action cannot be maintained. Public corporations being creatures of the statute, and having no powers except such as are expressly granted or necessarily and fairly implied in, or incident to, the powers granted, (1 Dill. Mun. Corp., § 55,) it follows that it would be competent for the general assembly to provide in terms that a city or town should not have the power to establish or grade the streets. This being true, it further follows that such power, if granted, must be exercised in the manner provided by the charter. The power to establish and grade streets in the first instance is conferred in express terms, and without qualification or limitation. (Code, § 465.) If there were no other statute defining and limiting such power, it would be conceded that the defendant was not limited to the establishment of a single grade, but that it could alter or change the same, and the plaintiff would have no redress, however much he may have

34 — 48 KAS.

been damaged by the change, unless the work was done negligently, and because of such negligence the damages were sustained. But the statute or charter does not stop there. The power to alter and establish a grade is expressly granted.

"The petition states the grade was unlawfully changed. Is this true? Section 469 of the code provides: First, that the city or town may alter the .established grade; second, if any property-owner has built in accordance with such grade, and is damaged by the alteration, the city or town shall pay said damages, which shall be assessed by three appraisers, one of whom shall be selected by the city or town, and one by the property-owner, and if they disagree they shall select a third appraiser; third, if the owner fails to appoint an appraiser in 10 days after receiving notice to do so, the city or town shall select all the appraisers; fourth, the appraisement, when completed, shall be returned to the city or town; and fifth, the city or town authorities may confirm or annul the appraisement; if annulled, all the proceedings shall be void; if confirmed, the property-owner may appeal to the circuit court.

"Under this statute the city or town may change the established grade, and may proceed to the extent of passing the required ordinance and making the necessary surveys, but if the change will damage private property the city or town cannot excavate or fill up the streets so as to conform them to such changed grade until the damages are assessed in the manner provided. The city or town is required to serve a notice on the owner of the property affected to choose an appraiser. This was not done, nor were any appraisers appointed, nor were the damages assessed or tendered to the plaintiff in the case at bar. Without taking any of the steps required by the statute the grade was changed, and the defendant proceeded to excavate the streets, and remove earth therefrom, thus causing the damage sought to be recovered. This was an unlawful act, because the granted power was not exercised in a lawful manner. This being so, an action lies. (*Hempstead v. Des Moines*, 52 Iowa, 303; *Dore v. City of Milwaukee*, 42 Wis. 18.) If this be not true, then the plaintiff has no remedy, although the statute in terms declares he is entitled to damages if his property has been injured by the change of grade. It is intimated he should have invoked the aid of a court of chancery and enjoined the defendant, or by *mandamus* compelled it to appoint appraisers. Possibly either or both of these remedies could have been adopted, but we do not think they were the only ones open to him.

"Ordinarily, at least, *mandamus* will not lie where there is a plain, speedy and adequate remedy in the ordinary course of law. (Code, § 3376.) And this is true as to an injunction unless the injury is irreparable, and the party sought to be enjoined is insolvent. The argument that either of these remedies should have been adopted proves too much; for neither of them is contemplated by the statute which creates the right, and is said to have provided an exclusive remedy by appeal for the enforcement of such right. Suppose the appraisement was regularly made as provided by statute, and annulled by the defendant, as it had an undoubted right to do; the property-owner cannot take any appeal in such case. Suppose the defendant had done so, and afterward proceeded to excavate the streets, and the plaintiff's property was thereby injured; no appeal would lie in such case. Is he without any remedy? If not, what is it? In our opinion he at least has the one adopted in this case. If a city or town desires to confine the property-owner to the statutory remedy of appeal, it must proceed as the statute directs. Having done so, and confirmed the appraisement, it may be that an appeal is the only remedy the owner has, if he is unwilling to accept the appraisement."

The case of *Wright v. Corporation of Georgetown*, 4 Cranch, 534, holds that a party whose property is injured by grading a street and raising the earth so as to obstruct the entrance to his dwelling-house can maintain a special action upon the case, notwithstanding the city attempted to appraise and ascertain the damages, the appraisement, however, being informal and void. The cases of *Hempstead v. Des Moines*, 52 Iowa, 303, and *Benton v. Milwaukee*, 50 Wis. 368, are directly in point. These cases are supported by a number of others, that hold that where railroad companies were authorized to lay tracks along the streets of a city, paying abutting owners damages occasioned thereby, the amount to be ascertained in a certain manner, and the railroad company omitted to perform the duty imposed on it in this respect, a common-law action can be maintained against the railroad company. Notable among these cases that we have examined are the following: *Dickson v. B. & P. Rld. Co.*, 3 MacArthur (D. C.), 362; *Mulholland v. Des Moines Rld. Co.*, 60 Iowa, 740; *Wilson v. Des Moines Rld. Co.*, 67 id. 509.

Separate and apart from these adjudicated cases, it seems on principles of abstract justice that this action ought to be maintained; that when a city is charged with the ascertaining and tendering or paying all damages to private property occasioned by the change of an established grade of a street, and a plain path of procedure is marked out for them to tread by legislative authority, and it entirely disregards the requirements of the law, and acts in such a manner that the property-owner is misled, and the city authorities themselves are mistaken in the practical effect of their proceedings, or are so bewildered by doubt that they finally resort to arbitrary action to accomplish that which they not only failed to do by their proceedings, but neglected to give notice to the property-owners to be affected thereby, that this legal remedy can be followed. If this be not so, then we will have to permit the abutting property-owners to submit, notwithstanding the fact that the declared policy of the state, as embodied in this statute, is, that they shall be allowed all damages that they may sustain by reason of the change of an established grade. The statute confers a positive right to such damages.

The power of the city to change the grade is dependent on the condition that all just damages be first paid or tendered. It is the primary duty of the city to set on foot and pursue the mode prescribed by the statute in the ascertainment of such damages. In pursuing these steps it gives a notice that not only misleads a property-owner, but one that it itself grossly violates and departs from, and then, when the property-owner awakes to the fact that his property is injured by the change of grade, the departure of the city from the terms of its own notice is made a pretext for a denial to the abutting owner of his right to the damages done his property. The statute was passed for the benefit of the city, the operative machinery of the law was given into the custody of the city the better to enable it to accomplish the purposes of the statute, and the city authorities cannot openly omit to do the things required of them and then be protected against all claims for damages that arise out of their own neglect of

Street—change of grade—damages—rights of property-owner. duty. We think this action is properly brought and can be successfully maintained. This decides the main controversy in the case; the principal complaint being that the demurrer of the city to the petition was overruled.

The instructions of the court with reference to the measure of damages are objected to. The city did not request any instruction as to the measure of damages. The court gave these two paragraphs: "That if, in consequence of such change, the owner suffered loss or damage to his buildings, he is entitled to recover, in an action like this, the amount of such damage;" and "in such cases the damage the plaintiff is entitled to recover, if any, is such damage as results to the plaintiff's property from the change of grade, if it was damaged." The evidence produced consisted of Sells's declarations that the buildings were worth $10,000 before the change of grade, and $5,000 after the change, and the other witnesses on behalf of the plaintiff were experts, who testified to the cost of lowering the floors and adjusting the buildings to the change of grade; and this course is approved by this court in the case of *City v. Martineau*, 42 Kas. 387. Each one of these witnesses made the cost of adjusting the building to the change of grade greater than the verdict of the jury by several hundred dollars. The city offered no evidence as to damage or value, so that it is doubtful whether the instruction, if erroneous, was prejudicial. In this feature this case is very similar to *Douglas v. Geiler*, 32 Kas. 499. The city can urge that the instruction given was a misstatement of the law as applicable to the facts developed on the trial, but not having requested a different instruction, it cannot be allowed to claim here that the neglect or omission to give a particular instruction not requested is reversible error. The instruction was not as definite and precise as it ought to have been, but there is sufficient in the record to demonstrate that the evidence was proper, and the case tried on the right theory as to the measure of damages, and the failure of the trial court to give the precise rule in the language of the books did not prejudice the city.

Complaint is made that evidence was allowed to go to the jury relative to the cost and value of the broken stone and asphalt sidewalk. The street commissioner testified that he "cut away the old walk; we cut it down to grade." In other words, a valuable sidewalk was entirely destroyed by the officers of the city, and Sells was compelled to construct a new one. The court gave no instructions on the question and the jury returned a lump sum. We assume that the jury considered the sidewalk item in connection with the other elements of damage, and, as sidewalks are built at the cost of the abutting property, we do not think this was error.

This covers all the questions raised or discussed by the city that are important, and we recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.