Smith v. City of Courtland.

---

No. 21,725.

PAUL SMITH et al., *Appellees*, v. THE CITY OF COURTLAND et al., *Appellants*.

SYLLABUS BY THE COURT.

1. CITY OF THIRD CLASS—*Grading of Streets*. The statute providing that the grade of a street may be established by ordinance, and when so established shall not be changed without a three-fourths vote of the city council, does not prevent the establishment of a grade by any other method than the adoption of an ordinance.

2. SAME—*Establishing Street Grades—Contracting · Street Improvements—Levying Assessments*. The statute providing that for the purpose of paying for certain improvements, after the streets "have first been brought to grade," assessments shall be made upon the abutting property does not fix the order in point of time in which the grade shall be established with respect to the contracting for the improvements or the levying of the assessments, but is intended to insure that the abutting property shall not be required to carry the expense of bringing the street to grade, by providing that it is only the expense that accrues after that work has been done which shall be charged to the adjoining lots.

Smith v. City of Courtland.

3. SAME—*Error in Contract for Street Improvements—Injunction.* The evidence held to warrant a finding that the price fixed in a contract for curbing and guttering certain streets included a charge for bringing to the established grade the part of the streets which was to support the curb and gutter, and therefore to justify an injunction against its enforcement.

4. SAME. Other defects in proceedings for the improvement of streets considered but not definitely passed on.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed May 11, 1918. Affirmed.

*W. D. Vance, R. E. McTaggart,* both of Belleville, and *W. R. Mitchell,* of Mankato, for the appellants.

*N. J. Ward,* of Belleville, and *R. W. Turner,* of Mankato, for the appellees.

The opinion of the court was delivered by

MASON, J.: The City of Courtland, a city of the third class, let a contract for curbing and guttering certain streets. An action was brought by several owners of abutting property, seeking to enjoin the carrying out of the contract and the levying of assessments to pay for the work. On final hearing a permanent injunction was granted, but further proceedings under the resolutions declaring the improvement necessary were expressly allowed. The defendants appeal.

The principal objection made to the power of the city to make the improvements referred to, by the means employed, is that no ordinance has ever been passed establishing the grade of the streets affected. The plaintiffs contend that the grade can be established only by ordinance, and that it must be established before any contract for curbing, guttering, or paving is let. Cases are cited tending to support this contention. (*C. & N. P. R. R. Co. v. City of Chicago,* 174 Ill. 439; *State v. District Court of Ramsey County,* 44 Minn. 244.) It has been held sufficient, however, if the grade is fixed before the improvement is made. (*Allen v. City of Davenport,* 107 Iowa, 92, 99.) The matter is so largely controlled by statute that little aid is to be derived from decisions in another jurisdiction.

1. It is true that the passage of an ordinance is the natural

method of establishing a permanent, as distinguished from a temporary, rule or condition. (*Remington v. Walthall,* 82 Kan. 234, 108 Pac. 112.) Yet where the method of the exercise of a power which a city possesses is not prescribed it may ordinarily use its own discretion in the matter, to the extent at least of employing any usual and appropriate means for the purpose. (28 Cyc. 275.) It is contended that the establishment of a grade is required to be accomplished through an ordinance, by virtue of a statute enacted in 1909, reading as follows:

"The mayor and council of the cities of the second and third class may by ordinance establish the grade of any street or alley in said city, and when the grade of any street or alley shall have been so established said grade shall not be changed until a resolution shall have been passed by a three-fourths vote of all the councilmen elected declaring it necessary to change said grade." (Gen. Stat. 1915, § 887.)

The power of a city to establish a grade cannot be thought to be derived from this statute, for it existed prior to the year named. Nor do we regard the statute as making an ordinance necessary to the establishment of a grade in all cases arising after its adoption. Its effect is to provide that a grade which is once established by ordinance shall be changed only by a three-fourths vote. We think the mayor and council still have authority, outside of this statute, to fix the grade of a street, and that this result may be brought about by any action, as for instance by a resolution, giving expression to a present intention to accomplish that purpose. (See *Wood v. Village of Pleasant Ridge,* 12 O. C. C. 177, 181.)

2. The contention that a grade must be established before a street is curbed or guttered is based upon the statute which reads:

"Cities of the third class in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes, in addition to other powers granted by law: To pave, curb and gutter any street, avenue or alley in said city and to tax the costs and expenses thereof to the abutting property and to issue improvement bonds for the payment of the costs and expenses of such improvements as herein provided. *First,* For all the paving, curbing, guttering and improvements of the squares and areas formed by the crossing of streets, avenues and alleys, the assessment shall be made upon all the taxable property of the city. . . . *Second,* For paving, curbing, and guttering all streets, avenues, and alleys and for doing all excavating and grading necessary for the same, except the squares and areas formed by the crossing of

streets, avenues and alleys, after said streets, avenues and alleys have first been brought to grade, as now provided by law to be done, the assessments shall be made for each block separately, on all lots and pieces of ground to the center of the block on either side of such street, or avenue, the distance improved or to be improved, or on the lots or pieces of ground abutting on such alley, according to the assessed value of the lots or pieces of ground without regard to the buildings or improvements thereon, which value shall be ascertained by three disinterested appraisers appointed by the mayor and council." (Gen. Stat. 1915, § 1974.)

We do not regard this as intended to fix the order in point of time in which the grade shall be established with respect to the contracting for the improvements or levying the assessments. Its purpose, as we interpret it, is to insure that the abutting property shall not be required to carry the expense of bringing the street to grade, by providing that it is only the cost that accrues after that has been done which shall be charged to the adjoining lots.

In *Keys v. Neodesha*, 64 Kan. 681, 685, 68 Pac. 625, it was said:

"Before a city can legally levy a special assessment for building sidewalks, it must establish a grade and bring that part of the street on which the walk is to be built to the grade so established."

But the reason is that until the grade is established it cannot be determined what part of the whole cost of the improvement is incurred in bringing the street to grade—that portion of the expense being chargeable to the city generally, and not to the abutting property.

3. An engineer employed by the city prepared the specifications on which the contract was let. He testified that he made a survey, and ran levels the full distance covered by the improvements, taking into consideration the outlying portion of the town; the curb and gutter were to be built according to these levels—on the grade determined by them, as marked by grade stakes; and that he made or was to make a survey of the town sufficiently to see that it was the correct grade for the draining of any other portion of the town that might be later improved. We think that by entering into a contract (authorized by ordinance) for the making of the improvements in accordance with these specifications, and levying the assessments to pay therefor, the city authorities adopted the grade

10—Kan.—3099

so indicated. The method pursued was very informal, but doubtless was sufficient to prevent the city from thereafter disputing the establishment of the grade. (See *O'Leary v. Street Railway Co.*, 87 Kan. 22, 123 Pac. 746.) .

The interest of the adjoining owner in having the grade established is to be assured that under color of paying for the curbing and guttering he is not required to pay for any part of the grading. The engineer testified that "the plans, specifications and profile did not call for any street grading or filling"; that "the excavations referred to in the specifications was simply what was necessary to install the curbing and guttering"; but that "there was some filling necessary to install the curb and gutter"; that "the deepest excavation would not exceed fourteen inches, and that would be at the street intersections"; that "the excavation generally required for the work was from 8 to 10 inches"; and that "in making the estimate of cost for this work he did not consider any excavation or filling other than that actually connected with the curb and gutter itself." The representative of the company which took the contract testified that "there would be some slight difference in the cost of the work for the different blocks; that he simply took the entire street into consideration in figuring on the job; that as to excavations necessary for the work, he estimated that as a whole it would be the thickness of the pavement (6 inches)"—referring to the guttering; that "from a practical standpoint there is no difference in the elevation of the different blocks"; and that "he figured nothing for extra excavation in any one block." Other witnesses said that some of the grade stakes were level with the ground, some above the ground, and some below the surface, a variation of twelve inches being indicated.

A decision in favor of the validity of the proceedings would have implied a finding that the variation between the natural grade and that established by the city was not substantial. But there clearly was some difference, and the court must be deemed to have found upon sufficient evidence that although small it was too large to be rejected as inconsiderable, thereby establishing that fact for the purposes of this case. Some slight amount of filling and excavating had to be done on account of this situation, and presumably the contract price was

influenced by this fact. Therefore, an expense of an unascertained and unascertainable amount, which should have been borne by the city generally, was charged against the abutting property. This justified an injunction against the carrying out of the contract. The objection was timely, and, as the improvements have not been made, no inequity results.

In *Clark v. Lawrence,* 75 Kan. 26, 88 Pac. 735, it was said:

"That some grading is necessary to level or fill the inequalities in the surface of a dirt road to prepare it for receiving the pavement seems evident; also that such leveling would be a necessary incident to the paving of a street, even after it had been brought to grade." (p. 29.)

The "grading" there referred to was obviously the leveling or smoothing over of slight and inconsiderable inequalities in the surface of the road existing after it had once been completely "graded" in the sense of being brought to the established grade. Here the process was that of bringing the natural grade to that fixed by the engineer.

4. The conclusion reached requires the affirmance of the judgment, and makes it unnecessary to pass upon the effect of various other irregularities in the proceedings which are made the grounds of objections by the plaintiff. The statute already cited seems to contemplate that the guttering at street intersections is an improvement that requires an ordinance for its authorization. The ordinance in this instance appears to relate only to curbing and guttering the parts of the streets in front of the various blocks designated. It is suggested that if this were the only defect the special assessments might be upheld by treating the contract as severable. While the agreed price of the various parts of the work is shown, it may not be entirely clear that the inclusion of the intersection work was not an inducement to the other. (*Sedgwick County v. The State,* 66 Kan. 634, 72 Pac. 284.) Objection is made because where adjoining lots belonged to the same owner they were not separately assessed. If the proceedings were otherwise regular this might not be fatal, but the plan followed in this regard gives opportunity for a question which might better be avoided.

The records of the proceedings of the city council with reference to the proposed improvement, as originally made, failed to show a due compliance with the law in several particulars.

After this suit was begun the record was amended by the action of the council, the apparent defects being thus cured. The plaintiffs contend that the amendent could not properly be accomplished in this manner, and at all events that it could not affect their rights in the action already begun. The council had the power to cause the record to be changed so as to show the actual facts. In the absence of a showing to the contrary the presumption must be that as finally adopted the record spoke the truth, and no prejudice appears to have resulted to the plaintiffs from the original defect in the entry. We understand this to have been the view of the trial court.

The judgment is affirmed.