No. 25,481.

ERNEST DECKER, *Appellant,* v. THE CITY OF PLEASANTON and A. F.
CORBY, *Appellees.*

### SYLLABUS BY THE COURT.

CITY OF THIRD CLASS—*How the Guttering, Curbing and Grading of City
Street Must Be Provided for—Grading Street Established by Ordinance—
Cost of Grading Street Paid for by City at Large—Illegal Proceedings of
City Therefor—City Enjoined from Proceeding Further.* In May, 1921, a
city of the third class, by ordinance, condemned certain sidewalk, curb and
gutter in the business part of the city and provided for constructing, on a
different grade, of a new sidewalk, curb and gutter according to "grade and
plan of survey" on file with the city clerk, and taxing the entire cost to
abutting lots. No grade for the street had ever been established and there
were no plans of survey. In a suit by an abutting lot owner to enjoin the
work, it is held:

1. The construction of the curb and gutter could not be provided by
ordinance, but must be by petition, or by resolution with time for protest,
as for pavement.

2. The grade of a street should be established by ordinance.

3. The cost of grading should be paid by the city at large.

4. Since the cost to the lot owner of the sidewalk included an unascer-
tainable sum for grading which was improperly taxed to him, the work
should be enjoined.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed
December 6, 1924. Affirmed in part and reversed in part.

*John A. Hall,* of Pleasanton, for the appellant.

*A. M. Kent,* of Pleasanton, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to enjoin the rebuilding of a sidewalk,
and from recurbing and reguttering in front of plaintiff's lots on
Main street in Pleasanton, a city of the third class. At the trial the
court denied the injunction as to rebuilding the sidewalk, from which
the plaintiff has appealed, and allowed the injunction as to recurbing
and reguttering, from which the defendant has appealed.

The controversy arises as follows: The mayor and council passed
an ordinance, published May 12, 1921, condemning the old side-
walk, curb and gutter in front of plaintiff's lots, and requiring new
ones of certain dimensions be built, and provided "the depth of such
sidewalk and curb and gutter shall be constructed according to the

grade and plan of survey on file in the office of the city clerk." It further provided that "such sidewalk, bringing to grade, curb and gutter" should be constructed under the supervision of the street committee, and if the old sidewalk, curb and gutter be not removed and the "sidewalk brought to grade" and the new sidewalk, curb and gutter constructed within sixty days the same would be done by the city and cost thereof assessed against the respective lots. Nothing further was done about the matter until July 13, 1922, when the city published a notice that it would receive bids on or before July 25, 1922, at 8 o'clock P. M. for the construction of about 775 square yards of sidewalk and about 1,925 feet of curb and guttering, on Main street, under the supervision of the street committee, "the depth of same according to plan and survey on file in the office of the city clerk," and specifying materials and finish to be used. On July 29, 1922, plaintiff served a written notice on defendant that if it undertook to remove the sidewalk or curb then in front of his lots it would be enjoined from so doing. On August 7, 1922, A. F. Corby, a contractor, filed with the city clerk a "bid on walk and curb and gutter according to plans and survey. Walk per yd. $1.74—curb and gutter per running ft., .87—excavating per yd., .28—tile per lot, $1.00; special bid if lime rock is used, per yd., .50." On August 14, 1922, this bid was accepted by the mayor and council. No bond was given by the contractor. Before any work was done in front of plaintiff's lots this suit was brought. On the trial it developed that the city never had established a grade for the construction of sidewalks, curbs or gutters, and that there never were any plans or surveys for such construction on file with the city clerk. There was parol testimony that some time before the passage of the ordinance the city constructed a "white way" along Main street for which posts, with a cement base two feet square, were set fifty feet apart along the street. At some places along the street the cement base of the post was a few inches above the sidewalk and at other places a few inches below it. At the time the posts were set, the city employed a civil engineer who made a survey of the street and prepared a plat and presumably had the bases of the "white way" posts on a grade, but the plat, or other record of the survey, was not filed with the city clerk, and no grade used by the engineer, if he used one, was made a matter of record. However, the chainman of the street committee in supervising the construction of the new sidewalk, curb and gutter provided for by the ordinance,

in front of lots other than plaintiff's, a part of which had been constructed at the time of the trial, used the top of the bases of the "white way" posts as a grade for the top of the sidewalk.

The statute applicable to recurbing and reguttering along streets in cities of the third class, at the time of the passage of the ordinance in question, was Laws of 1921, chapter 143 (since revised as R. S. 12-602). This requires the proceedings to be initiated by a resolution of the mayor and council, which shall be published four weeks, with time for protests, as for a pavement. There was no attempt to follow this statute. Hence, the court properly enjoined the building of the curb and gutter under the ordinance, and defendant's cross-appeal on that question is without merit.

As to the sidewalk, the plaintiff contends (a) since no grade had been established by the city, and there were no plans of survey on file, it was impossible for him to comply with the ordinance which required him to construct the sidewalk "according to the grade and plan of survey on file in the office of the city clerk";' (b) that the contractor, whose "bid on walk and curb and gutter according to plans and survey" was accepted, would not know where to put the sidewalk, and (c) the ordinance taxes both the sidewalk and the grading to his lots, whereas the grading should be paid for by the city at large, and the cost of the sidewalk only should be taxed to the lots.

The statute contemplates that the grade for sidewalk ordered to be constructed be established by ordinance, that when established it be changed only by a three-fourth vote of the mayor and council, and that the city pay lot owners damages, if any is sustained by them, by reason of the change of the grade. (Gen. Stat. 1915, §§ 887 to 889, R. S. 12-632 to 12-634.) While possibly a grade might be established in some other manner (*Smith v. City of Courtland*, 103 Kan. 142, 144, 172 Pac. 1027), there is no showing here that a grade had been established in any manner. It is, of course, important that when a grade is established something in the nature of a permanent record be made of it, not only that the city officials, but property owners may be able to know their rights relating thereto. The statute in force at the time the ordinance in question was passed (Gen. Stat. 1915, § 1909) required that the cost of the grading be paid for by the city at large, while the cost of constructing the sidewalk itself be taxed to the lots. (*Keys v. Neodesha*, 64 Kan. 681, 68 Pac. 625; *Kindley v. Rogers*, 85 Kan. 645, 647, 118 Pac. 1037; *Smith*

*v. City of Courtland,* supra.) The defendant calls our attention to the last paragraph of Laws of 1921, chapter 143, section 1 (since revised as R. S. 12-611), but this does not purport to change the rule as to who shall pay for grading. And by the cases above cited it has been determined that when the cost both of the grading and of the construction of the sidewalk is attempted to be taxed to the lot, it should be enjoined, and especially is this true where the grading is an unascertainable amount, as it is here. It follows that the judgment enjoining the construction of the curb and gutter should be affirmed, and the judgment refusing to enjoin the construction of the sidewalk be reversed with directions to grant the injunction.