No. 34,879

William M. Rinehart and Ruby Rinehart, *Appellees,* v. The City of Concordia, *Appellant.*

(105 P. 2d 897)

Opinion filed October 5, 1940.

*Clarence Paulsen,* of Concordia, for the appellant.

*Lee R. Stanford* and *Marvin O. Brummett,* both of Concordia, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action against a city of the second class for damages resulting from a change in the grade of a city street. The appeal is by the city from an order overruling its demurrer to plaintiffs' amended petition.

Plaintiffs own a tract of land in the corner of a city block, in Concordia. Their house faces east on Cedar avenue, which is a paved street. Fourteenth street, the street here involved, is not paved and runs along the south side of plaintiffs' ground. In July, 1939, pursuant to resolution adopted and published in the month of June, the city curbed, guttered and improved Fourteenth street. In improving it the level of the street was raised above its natural level and especially across a ravine or ditch which crosses Fourteenth street and the west end of plaintiffs' ground. The foregoing facts, although not all alleged in the amended petition, were conceded in oral argument and are stated solely for the purpose of assisting the reader in obtaining a somewhat clearer impression of physical surroundings. The decision on the demurrer must, of course, be based upon the allegations contained in the amended petition. The pertinent portion thereof reads:

"That said property is bounded on the immediate east by Cedar street and abuts Fourteenth street on the south in said city, county and state; that from time immemorial, said Fourteenth street abutting said property was of approximately the same grade as said property owned by said plaintiffs; that said defendant for many years previous hereto, and particularly in 1937, improved, repaired and worked on said street; that said city graveled, and hard-surfaced said street many times prior to the 5th day of July, 1939; that said defendant graded, erected, constructed, changed and repaired and cleaned out culverts for many years previous to the 5th day of July, 1939, on said street and approximately two years prior to the 5th day of July, 1939, placed crushed rock on said street and at all times mentioned previous to the 5th day of July, 1939, said defendant maintained, repaired, cleaned and maintained for the public on said street, a reasonable surface for the passage of said public and maintained said street and well-defined boundaries and said grade as aforesaid, from time immemorial; that the buildings and improvements on the property owned by said plaintiffs were built in accordance with and to conform to the grade of said Fourteenth street, previous to the time hereinafter mentioned.

"That on or about the 5th day of July, 1939, and for a period of approximately three weeks thereafter, said defendant changed the grade, graded,

raised, built up and constructed said Fourteenth street abutting said property owned by said plaintiffs, illegally and without authority therefor; that said defendant raised the grade of said street from approximately four to ten feet, abutting said property, without legal authority therefor.

"That said raising of said grade, construction and increasing in height as aforesaid seriously impaired the ingress and egress of said property owned by said plaintiffs; that water will be caused to drain on the property of said plaintiffs and to collect and become stagnant; that by reason of said grade, construction and increase in height of said street, said plaintiffs have been forced to build retaining walls and improvements on said property and will in the future be forced to build other retaining walls and improvements; and that the property of said plaintiffs is a great distance below the surface, to wit: from four to ten feet, of said Fourteenth street as graded up by said defendant."

The sole issue presented is whether an "established" grade existed on Fourteenth street prior to the change of grade made by the city in 1939. Defendant contends no established grade existed on Fourteenth street prior to the change in grade made by the city in 1939, and that the overruling of its demurrer therefore constituted reversible error. On the other hand, plaintiffs insist the grade of the street had become established through long usage of its natural surface as a grade line and by maintenance of the street by the city at its natural grade. The question is what constitutes an established grade. That there is not complete harmony of views upon the subject of the mode of establishing a permanent grade must be conceded. (25 Am. Jur., Highways, § 40; 44 C. J., Municipal Corporations, §§ 2293 and 2294; 5 McQuillin on Municipal Corporations, 2d ed., § 2125.) In some jurisdictions it has been held that actual recognition of a grade line and acquiescence therein by the borough authorities, may be sufficient to constitute an established grade without formal legislative action. In those jurisdictions the decisions turn upon the question whether the particular acts of municipal authorities disclose acquiescence in or recognition of the grade as an established grade. A critical analysis of numerous cases also discloses material variance in constitutional and statutory provisions touching the liability of municipalities for a change of grade. Under these circumstances many decisions from foreign jurisdictions are of little or no aid in the instant case. Our statute, G. S. 1935, 12-632, applicable to cities of the second and third class, provides:

"The governing body of the cities of the second and third class may by ordinance establish the grade of any street or alley in said city, and when the grade of any street or alley shall have been so established said grade shall

not be changed until a resolution shall have been passed by a three-fourths vote of all the councilmen elected declaring it necessary to change said grade."

G. S. 1935, 12-633, governing assessment of damages, reads:

"When such resolution is passed declaring it necessary to change any grade, the mayor, by and with the consent of the council, shall appoint three disinterested appraisers to assess the damages caused to the property owners by such change of grade; they shall assess the damage done to each lot or piece of land damaged by such change of grade. When said appraisers have so ascertained the total damages caused by such change of grade they shall report the total damages to the governing body, which amount shall be paid out of the general fund."

Defendant contends the lawmakers by these provisions have clearly indicated the method by which a permanent grade may be established and the conditions under which liability of the municipality attaches. It contends no grade had been so established prior to 1939; that since no established grade was changed, the city is not liable in damages, and cites *Rapid Transit Rly. Co. v. Early*, 46 Kan. 197, 26 Pac. 422; *City of Topeka v. Sells*, 48 Kan. 520, 29 Pac. 604; *Smith v. City of Courtland*, 103 Kan. 142, 172 Pac. 1027; *Decker v. City of Pleasanton*, 117 Kan. 279, 231 Pac. 330, and decisions from other jurisdictions. The decisions of this court are based upon statutes governing cities of the second and third class, and upon G. S. 1935, 13-1019 and 13-1020, applicable to cities of the first class. These statutes governing method of establishing a grade in cities of the respective classes have been for many years and are now essentially the same. Their legal effect is identical and it will be unnecessary to differentiate between those decisions upon the basis of classification of cities. In the early case of *Rapid Transit Rly. Co. v. Early*, supra, the rule touching liability for damages was clearly stated. It was held:

"A city has the right to establish the grade of its streets, and it is only when the grade is changed, after being once established, that damages can be allowed therefor to property owners." (Syl. ¶ 1.)

That rule as to liability for damages has been followed consistently in this state.

Plaintiffs, however, contend that although the statute declares a grade may be established by ordinance, the statute does not preclude its establishment in some other manner and in support of that view stress particularly our own decision in *Smith v. City of Courtland*, supra, in which it was said:

"We think the mayor and council still have authority, outside of this statute, to fix the grade of a street, and that this result may be brought about by any action, as for instance by a resolution, giving expression to a present intention to accomplish that purpose. (See *Wood v. Village of Pleasant Ridge,* 12 O. C. C. 177, 181.)" (p. 144.)

In the Courtland case, however, the city had by formal municipal action adopted the grade in question and had effectually precluded itself from denying its establishment. The opinion plainly reveals the basis of the decision as follows:

"An engineer employed by the city prepared the specifications on which the contract was let. He testified that he made a survey, and ran levels the full distance covered by the improvements, taking into consideration the outlying portion of the town; the curb and gutter were to be built according to these levels—on the grade determined by them, as marked by grade stakes; and that he made or was to make a survey of the town sufficiently to see that it was the correct grade for the draining of any other portion of the town that might be later. improved. We think that by entering into a contract (authorized by ordinance) for the making of the improvements in accordance with these specifications, and levying the assessments to pay therefor, the city authorities adopted the grade so indicated. The method pursued was very informal, but doubtless was sufficient to prevent the city from thereafter disputing the establishment of the grade. (See *O'Leary v. Street Railway Co.,* 87 Kan. 22, 123 Pac. 746.)" (p. 145.)

In *Decker v. City of Pleasanton,* 117 Kan. 279, 231 Pac. 330, we said:

"The statute contemplates that the grade for sidewalk ordered to be constructed be established by ordinance, that when established it be changed only by a three-fourth vote of the mayor and council, and that the city pay lot owners damages, if any is sustained by them, by reason of the change of the grade. (Gen. Stat. 115, §§ 887 to 889, R. S. 12-632 to 12-634.) While possibly a grade might be established in some other manner (*Smith v. City of Courtland,* 103 Kan. 142, 144, 172 Pac. 1027), there is no showing here that a grade had been established in any manner. It is, of course, important that when a grade is established something in the nature of a permanent record be made of it, not only that the city officials, but property owners may be able to know their rights relating thereto." (p. 281.)

In the instant case the city of Concordia had taken no action, formally or otherwise, to establish a grade prior to 1939. Under these circumstances there was, of course, no record a grade had been established. We have here simply a case of use and maintenance of a street at its natural grade. It has been held that merely working streets or otherwise improving them, is not sufficient to establish a grade. (25 Am. Jur., Highways, § 40; Anno. 23 L. R. A. 661;

L. R. A. 1915A. 384.)   We are persuaded that mere use and maintenance of a city street at its natural grade, without any effective municipal action recognizing or adopting such grade, is not sufficient to constitute an established grade, and that mere change of the natural grade does not render the municipality liable in damages. This interpretation of our statutes, we believe, conforms to the legislative intent.   It is likewise in harmony with what we regard as the safer and more salutary rule as expressed in many decisions and clearly stated as follows:

"As a prerequisite to damage due to change of a street grade, it is frequently stated that the prior grade must be established as the written law prescribes, *e.g.,* by ordinance, or resolution, or by some other formal effective municipal action.  According to this view, therefore, to entitle an abutting lot owner to damages resulting from grading a street under laws allowing damages for a change of grade, usually he must show that there had been a prior established grade, and that the damage resulted by reason of a change thereof. . . ."   (5 McQuillin, Municipal Corporations, 2d ed., § 2125.)

Were the rule otherwise, property owners and municipalities alike would be in a constant state of uncertainty and confusion.   Every excavation, fill or change in the exact level of a street would result in confusion relative to which condition constituted the established grade.

It is true, the petition charges the city illegally and without authority changed, graded and raised the street in 1939.   The city had authority to establish a grade.   That act in itself was, therefore, lawful and the words "illegally and without authority," standing alone, do not affect the case.   (*Methodist Episcopal Church v. City of Wyandotte*, 31 Kan. 721, 3 Pac. 527.)

The order overruling the demurrer is reversed and the case is remanded with directions to sustain the demurrer.