No. 40,542

Bob May Chevrolet Company, Inc., *Appellant*, v. The City of Hugoton, Kansas, a Municipal Corporation, *Appellee*.

(313 P. 2d 259)

Opinion filed July 3, 1957.

*Paul A. Wolf*, of Hugoton, argued the cause, and *J. S. Brollier*, of Hugoton, was with him on the briefs for the appellant.

*Bernard E. Nordling*, of Hugoton, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action to recover for damage to plaintiff's property caused by defendant city when it lowered the grade of Third Street, which abuts the property in question.

Plaintiff has appealed from an order sustaining defendant's demurrer to the second amended petition, hereafter referred to as the petition. .

Rather than attempt to summarize the detailed allegations of the petition, and in the interest of accuracy, that pleading, omitting formal parts, is set out in full.

"For its cause of action against the defendant, plaintiff alleges and states:

"(1) That the plaintiff is the owner of Lots 9 and 10 in Block 16, in the City of Hugoton, Kansas, on which is located two buildings and other appurtenances used for commercial and business purposes; that said property is bounded on the immediate west by Main Street, and on the immediate south by Third Street, and that Monroe Street is the first street to intersect Third Street east of Main Street.

"(2) That in June, 1920, by a majority vote of the governing body, the defendant hired a firm of consulting engineers to establish grades for sidewalks, and a grade was established for sidewalk purposes at the intersection of Third and Main Streets; that blue prints showing the grade of such sidewalk are on file in the office of the City Clerk; that in March, 1920, by a majority vote of the governing body, the defendant hired a firm of consulting engineers to make a drainage survey of the townsite and to establish grade lines on streets; that such survey established street grades in a manner which provides for proper surface drainage of said city; that the consulting engineering firm so employed by defendant prepared blue prints showing the said street grades, but such blue prints have been lost or misplaced and cannot be found; that in April, 1928, by a majority vote of the governing body, the defendant employed consulting engineers to prove the former survey establishing grade and also for the purpose of curbing, guttering, grading, and otherwise improving certain streets; that such survey proved the street grades previously established in a manner which would provide for proper surface drainage of said City; that the consulting engineer so employed by defendant prepared blue prints showing the grade of said streets for the said street improvement project, but such blue prints have been lost or misplaced and cannot be found; that by Ordinance No.

155, dated June 27, 1930, defendant formally established a grade on Main Street at the intersection of Third Street in accordance with the previous surveys herein mentioned and thus approved and adopted said surveys establishing street grades; that a copy of said Ordinance No. 155 is hereto attached as Exhibit 'A' and by this reference made a part hereof; that by Ordinance No. 229, dated March 20, 1945, the defendant formally established a grade on Monroe Street at the intersection of Third Street in accordance with the previous surveys herein mentioned and thus approved and adopted said surveys establishing street grades; that a copy of said Ordinance No. 229 is hereto attached as Exhibit 'B' and by this reference made a part hereof; that by Ordinance No. 278, dated September 25, 1952, the defendant provided that the grade of certain portions of Third Street be formally established in accordance with the previous surveys herein mentioned and thus approved and adopted said surveys establishing street grades, but no actual work was performed as a result of said ordinance; that a true copy of Ordinance No. 278 is attached hereto as Exhibit 'C' and by this reference made a part hereof; that there are blue prints on file in the office of defendant showing that a grade has been established on Third Street at its intersection with Main Street and at its intersection with Monroe Street; that by Ordinance No. 143, dated November 12, 1929, defendant established a sewer district to serve the inhabitants of defendant city, a true copy of which ordinance is attached hereto as Exhibit 'D' and by this reference made a part hereof; that as a result of said Ordinance No. 143 and as a result of a survey made by the consulting engineering firm employed by defendant, the main sewer line was placed under Third Street and elevation levels were established for the sewer manhole covers which were placed on the surface of Third Street, all as shown by blue prints on file in the office of defendant.

"(3) That during the first half of the year 1955, the defendant excavated Third Street and lowered its grade approximately two feet at a point immediately south of the southwest corner of plaintiff's property, and thence deeper in an easterly direction to a depth of approximately ten feet at a point immediately south of the southeast corner of plaintiff's property, which work was completed on or about June 25, 1955.

"(4) That the lowering of the grade of Third Street along the south side of plaintiff's property seriously impaired ingress to and egress from the same, and impaired its value for commercial and business purposes, and necessitates and requires the relocation of the buildings and improvements thereon; that the fair market value of plaintiff's property was reduced in the amount of $3,000.00, and the cost of relocating the buildings on said real estate is $900.00 as a result of lowering said grade, which amounts plaintiff is entitled to recover from the defendant.

"(5) That on September 13, 1955, plaintiff filed in the office of the Clerk of defendant a verified 'Notice of Claim for Damages,' a true copy of which is hereto attached as Exhibit 'E' and by this reference made a part hereof; that said claim has not been allowed or paid.

"WHEREFORE, plaintiff prays for judgment against the defendant in the amount of $3,900.00, with interest thereon at the rate of six per cent per annum from June 25, 1955, together with the costs of this action, and for such other and further relief as is just and proper."

For purposes of this opinion, it is considered unnecessary to set out in full the various exhibits referred to.

G. S. 1949, 12-632, provides:

"The governing body of the cities of the second and third class may by ordinance establish the grade of any street or alley in said city, and when the grade of any street or alley shall have been so *established* said grade shall not be changed until a resolution shall have been passed by a three-fourth's vote of all the councilmen elected declaring it necessary to change said grade." (Our emphasis.)

G. S. 1949, 12-633, provides:

"When such resolution is passed declaring it necessary to change any grade, the mayor, by and with the consent of the council, shall appoint three disinterested appraisers to assess the damages caused to the property owners by such change of grade; they shall assess the damage done to each lot or piece of land damaged by such change of grade. When said appraisers have so ascertained the total damages caused by such change of grade they shall report the total damages to the governing body, which amount shall be paid out of the general fund."

G. S. 1949, 12-634, relates to the procedure to be followed by the appraisers and also to that of the governing body upon the filing of the report, and provides for appeals from awards made.

Plaintiff contends that the acts and conduct on the part of the city over the years, as alleged in the petition, constituted the *establishment* of a street grade, thus entitling plaintiff to damages under the mentioned statutes, when, in 1955, defendant city, as alleged, *changed* such *established* grade.

Defendant city contends that its acts and conduct over the period of years, as alleged in the petition, did *not* have the effect of *establishing* a grade; that under the statute an abutting property owner is entitled to damages *only* where an *established* grade is changed, and therefore plaintiff is not entitled to recover.

In other words, the sole question presented is whether the allegations of plaintiff's petition relating to the alleged prior *establishment* of a grade on the street in question are sufficient to withstand the demurrer—that is, do those allegations of the various acts done, taken as true, make out a prima facie case to show that a grade had formerly been *established?*

Both parties cite three of our cases dealing with the general subject. They are *Smith v. City of Courtland,* 103 Kan. 142, 172 Pac. 1027; *Decker v. City of Pleasanton,* 117 Kan. 279, 231 Pac. 330, and *Rinehart v. City of Concordia,* 152 Kan. 473, 105 P. 2d 897.

In the Courtland case the city let a contract for curbing and guttering certain streets. An action was brought by several owners of abutting property seeking to enjoin the carrying out of the contract and the levying of an assessment to pay for the work. The principal objection made to the power of the city to make the improvements referred to by the means employed was that no ordinance had ever been passed "establishing" the grade of the streets affected, and it was contended a grade can be established only by ordinance. This court held that the statute providing that the grade of a street may be established by ordinance, and when so established shall not be changed without a three-fourth's vote of the city council, does not prevent the establishment of a grade by any other method than the adoption of an ordinance—that is to say, a city, through its governing body, may, by its acts, "establish" a grade without the passage of an ordinance therefor, and that the effect of the statute merely is to provide that a grade which is once established by ordinance shall be changed only by a three-fourth's vote. In the course of the opinion it was said:

"An engineer employed by the city prepared the specifications on which the contract was let. He testified that he made a survey, and ran levels the full distance covered by the improvements, taking into consideration the outlying portion of the town; the curb and gutter were to be built according to these levels—on the grade determined by them, as marked by grade stakes; and that he made or was to make a survey of the town sufficiently to see that it was the correct grade for the draining of any other portion of the town that might be later improved. We think that by entering into a contract (authorized by ordinance) for the making of the improvements in accordance with these specifications, and levying the assessments to pay therefor, the city authorities adopted the grade so indicated. The method pursued was very informal, but doubtless was sufficient to prevent the city from thereafter disputing the establishment of the grade." (pp. 145, 146.)

In the Pleasanton case the city passed an ordinance which provided for the condemnation of certain sidewalks, curbs and gutters, and further provided for the construction of new sidewalks, curbs and gutters "according to the grade and plan of survey on file in the office of the city clerk." Some years prior the city had constructed a "white way" along the street in question for which posts with a cement base two feet square were set fifty feet apart along the street. At the time the posts were set the city employed a civil engineer who made a survey of the street and prepared a plat and presumably had the bases of the "white way" posts on a grade, but the plat or other record of the survey was not filed with the city

clerk, and no grade used by the engineer, if one was used, was made a matter of record. In the construction of the new sidewalks, curbs and gutters the tops of the bases of the "white way" posts were used as a grade for the top of the sidewalk.

In passing on the questions presented, this court, while recognizing the rule of the Courtland case to the effect that a grade may be established in a manner other than by the passage of an ordinance, held there was no showing that a grade had been established in any manner, and noted that it is important that when a grade is established something in the nature of a permanent record be made of it so that city officials and property owners may be able to know their rights relating thereto.

In the Concordia case the action was against the city for damages resulting from a change in the grade of a street. The pertinent portions of the petition are set out in the opinion and, briefly summarized, they alleged that for many years prior to 1939 the city had improved, repaired and worked on the street in question; that it had graded, erected, constructed, changed, repaired and cleaned out culverts on the street, and recently had placed crushed rock thereon.

The city appealed from an order overruling its demurrer to the petition, and the sole question presented was whether an "established" grade existed on the street in question prior to the change of grade made by the city in 1939.

It was held that the allegations of the petition merely established a case of use and maintenance of a street at its "natural" grade, and that the mere use and maintenance of a city street at its natural grade, without any effective municipal action recognizing or adopting such grade, is insufficient to constitute an "established" grade, and that the city's demurrer to the petition should have been sustained.

The Courtland case, therefore, is authority for the proposition that a city, through its governing body, may, by its acts, "establish" a grade without the passage of an ordinance.

In the Pleasanton case there simply was no showing that a grade had been established in any manner.

The Concordia case is authority for the proposition that mere use and maintenance of a city street at its "natural" grade, without any effective municipal action recognizing or adopting such grade, is insufficient to constitute an "established" grade, and that mere

change of a "natural" grade does not render the municipality liable in damages.

And so, applying the rules to the case before us—the matter simply amounts to this:

If the acts of defendant city over the years did not, in fact, "establish" a grade in the street abutting plaintiff's property, or if they amounted to no more than mere use and maintenance of the street at its "natural" grade, the change in 1955 did not subject the city to liability in damages, and the demurrer to the petition was properly sustained.

On the other hand, if the acts of defendant city over the years did, in fact, "establish" a grade in the street in question, and if, in fact, it was changed in 1955, plaintiff would be entitled to damages under the statute, and the demurrer should have been overruled.

Concededly, the question is a close one and the correct answer is not free from doubt, but we are of the opinion the demurrer should have been overruled. Plaintiff alleges many acts by the city over a period of years. They have been set out and will not be repeated. Whether plaintiff will be able to prove them is of course another thing, and, if proved, whether they show that a grade had, in fact, previously been "established," we think are questions properly to be determined by the trial court after hearing the evidence. All contentions by the city in support of the ruling below have been noted and given careful consideration. Nevertheless, we are of the opinion the demurrer was improperly sustained.

The judgment of the trial court is therefore reversed.