THE METHODIST EPISCOPAL CHURCH SOUTH, OF WYANDOTTE CITY, KANSAS, v. THE CITY OF WYANDOTTE.

1. STREETS — *Changing Grade* — *Damages.* An action will not lie against a city of the second class for damages for the injury to adjacent property caused by a change having been lawfully made by the city authorities in the grade of a public street.

2. ———— The provisions of §§ 54 and 65, ch. 100, Laws of 1872, do not provide for the payment of damages incidentally caused to adjacent property by a change of the established grade of a public street.

*Error from Wyandotte District Court.*

ACTION by *The Methodist Episcopal Church South, of Wyandotte City, Kansas,* against *The City of Wyandotte.* On May 23, 1883, the plaintiff filed the following petition (omitting court and title):

"The plaintiff states that it is a religious corporation, existing, organized and incorporated under the laws of the state of Kansas, and known by the corporate name of the Methodist Episcopal Church South, of Wyandotte City, Kansas, and complains and alleges that the defendant, the city of Wyandotte, is a municipal corporation, created, existing and incorporated under the laws of the state of Kansas, and known by the corporate name of the city of Wyandotte;

46 — 31 KAS.

and that said city of Wyandotte is a city of the second class, duly incorporated as aforesaid.

"Plaintiff further states that it is the owner and in possession of the following real estate lying and being situate in the city of Wyandotte, county of Wyandotte, and state of Kansas, and described as follows, to wit: Beginning at the northwest corner of the graveyard survey, known as the burial ground in the allotment of the Wyandotte commissioners appointed under the treaty of Washington, approved January 31, 1855, between the United States and the Wyandotte nation of Indians; thence west, 9 links and 67 poles; thence south, 10 poles; thence east, 6 poles and 33 links; thence north, 10 degrees 30 minutes east, along the western boundary of said graveyard survey, 10 poles and 55 links, to place of beginning, containing one-half acre of land, and lying on the south side of Minnesota avenue, a public street of said city of Wyandotte, and adjoining to and abutting said street; that on the real estate above described there is erected a large and commodious brick building, the property of and in possession of plaintiff, known as a church building, and used as a place of public worship by the plaintiff and the public, and there is also erected on said real estate a frame building containing four rooms, also the property of and in the possession of plaintiff, being a convenient dwelling house and used as a parsonage or place of residence of the officiating minister; that the said buildings and other improvements on said real estate were erected some years since at a cost of about four thousand dollars, and that the value of said real estate and said improvements thereon is the sum of eight thousand dollars; that before the erection of the said buildings and improvements as aforesaid, to wit, on or about the — day of ——, 1872, a grade was purported and pretended to be established on Minnesota avenue, a public street as aforesaid, and that said buildings and improvements were made and erected by plaintiff with a view and in conformity thereto; that in the month of January, 1883, said defendant did proceed unlawfully and without authority to grade and lower said street opposite to and adjoining and abutting plaintiff's said property, and to change said pretended established grade of said street as aforesaid by unlawfully and without authority digging and carrying away the dirt from said street, and lowering the same about nine feet by removing and taking away the dirt from said street adjoining and abutting plaintiff's said property as aforesaid; that by reason of the lowering and

taking away of the dirt from said street as aforesaid, so done as aforesaid unlawfully and without legal authority, the said real estate and buildings of plaintiff as aforesaid are greatly damaged and the safety thereof greatly endangered, the foundation of said buildings being likely to give away on account of the digging and taking the dirt of said street as aforesaid; and the said buildings are hereby rendered less accessible; and further, that the value of the said property is greatly depreciated and lessened, and that said property has been rendered less desirable in every way in consequence of the aforesaid illegal, unlawful and unauthorized acts of the said defendant as aforesaid.

"Plaintiff further states that defendant well knew of the damage done to plaintiff by the lowering of the said street as aforesaid, and that no lawful means were taken by defendant as provided by law to ascertain and assess the amount of the damages so done as aforesaid, before or at the time of the lowering the street as aforesaid, by having the amount of damages or injury done to plaintiff as aforesaid ascertained and assessed by competent persons, citizens of said city selected and qualified as is by law in such cases made and provided, and to do the same defendant wholly failed, neglected, and refused.

"Plaintiff further states that on the 6th day of March, 1883, at the city of Wyandotte, in said county and state, plaintiff presented a certain claim or demand in writing to the council of the said city of Wyandotte, defendant aforesaid, against the said defendant in the sum of fifteen hundred dollars, being the amount of damages sustained by plaintiff by reason as aforesaid, together with a full account of the items thereof, and verified by the oath of the agent of plaintiff as required by law; and that an allowance of the, same or any part thereof by the council of the city of Wyandotte (defendant aforesaid) was then and there refused, and said claim rejected.

"Plaintiff states that by the unlawful and unauthorized acts of the defendant, so done as aforesaid, plaintiff is injured and damaged in the sum of fifteen hundred dollars, and which sum defendant having refused to pay, or any part thereof, by reason aforesaid an action hath obtained in favor of plaintiff and against defendant in the sum of fifteen hundred dollars, being the damage sustained by plaintiff as aforesaid. Plaintiff therefore prays judgment against de-

fendant for the sum of fifteen hundred dollars, and for costs of suit."

On June 11, 1883, the defendant demurred to the petition, upon the ground that it does not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant. On August 29, 1883, the demurrer came on for hearing. The court sustained the demurrer; to which ruling the plaintiff excepted, and brings the case here.

*R. P. Clark*, for plaintiff in error.

*Alden & McGrew*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The question arises, whether under the allegations of the petition the plaintiff is entitled to recover damages. The act relating to cities of the second class provides that "the cities coming under the provisions of this act in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by law: . . . *Second,* To open and improve streets, avenues, and alleys, make sidewalks and build bridges, culverts and sewers within the city. (Laws of 1881, ch. 48, § 2; see also § 32, ch. 100, Laws of 1872.) This power "to open and improve streets" includes the power to alter the grade or change the level of the land on which the streets are laid out. If the city has once fixed a grade, which it afterward finds improper or insufficient, it has not exhausted its power, and therefore has the authority to change the grade to improve the streets. "As the duty is a continuing one, so is the power necessary to perform it." (*Smith v. The Corporation of Washington,* 20 How. 135; *Goszler v. Georgetown,* 6 Wheat. 593.)

There is the same reason and the same justification for changing a grade once established, when the public convenience is found to require it, that there is for fixing it in the first place. Therefore the power to open and improve

streets, which includes the power to grade them, may be exercised from time to time as the wants of the city may require. Of the necessity or expediency of this exercise, the mayor and council of the city, and not the courts, are judges. The injury, if any, which resulted to the plaintiff by the change made by the city in the grade of the public street, resulted from the lawful exercise of a power granted to the city by legislative authority. For the incidental injury arising from the exercise of this authority, the city is not liable. Dillon says:

"In connection with the principle that there is no implied liability for doing an act which is either direct or authorized by valid statute, may be noticed the power of municipal corporations to grade and to change the established grade or level of their streets, though the exercise of the power may be injurious to the adjoining property owners." (2 Mun. Corp., 3d ed., § 989.)

Again, he says:

"The courts, by numerous decisions in most of the states, have settled the doctrine that municipal corporations acting under authority conferred by the legislature to make and repair, or grade, level and improve streets, if they keep within the limits of the city and do not trespass upon or invade private property, and exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to adjoining owners, whose lands are not actually taken, trespassed upon or invaded, for consequential damages to their premises, unless there is a provision in the charter of the corporation, or some statute creating a liability. There is no such liability even though in grading and leveling the street, a portion of an adjoining lot, in consequence of the removal of its natural support, falls into the highway." (Sec. 990, id.)

(See also *City of Pontiac v. Carter*, 32 Mich. 164, and cases there cited; *City of Atchison v. Challiss*, 9 Kas. 610.)

It is true that the petition alleges that the city proceeded "unlawfully and without authority," and charges that the acts of the city were unlawful and unauthorized. As the city had the power to do the acts charged, and as such acts in themselves were lawful, the words "unlawful and without authority," as

used, do not affect the case. There is no allegation that the city acted negligently, unskillfully, maliciously, or wantonly.

The Ohio cases to which we are referred stand almost alone, as the other cases are either founded upon some statute creating a liability, or upon the provisions of state constitutions differing widely from that of Kansas. The numerous cases supporting the conclusion we have reached are best sustained in principle.

Counsel insists, however, that the statute expressly provides for the payment of damages occasioned by the improvement of the streets of a city of the second class, and refers to §§ 54 and 65, ch. 100, Laws of 1872. Section 54 reads:

"The council shall have power to open, widen, extend or otherwise improve any street, avenue, alley, or lane, etc.: . . . *Provided*, That all damages sustained by the citizens of the city, or the owners of property therein, shall be ascertained as prescribed in § 65."

. . Without this section the city had the power to make the improvement complained of, under § 2, ch. 40, Laws of 1881, and like power was granted under § 32, ch. 100, Laws of 1872. (See also § 19, ch. 65, Laws of 1873.) Said § 54 grants to the council the power to open, widen or extend any street, and the words "or otherwise improve" must, under the rules of construction, be limited by the preceding language of the section, and therefore must be held to refer only to such improvements as are like those mentioned, namely, "to open, widen and extend," or are necessarily incident thereto and which partake of the same character. Sec. 65, to which § 54 refers, merely provides for compensation to persons whose property shall be taken for public use or injured by the taking for public use; and therefore under its terms, persons incidentally injured by a change in the established grade of a public street already opened, are not entitled to compensation. The injury incidentally affecting adjacent property by the change of the grade of a public street, is not, under said § 65, the taking of private property for public use. We think it was not intended by the sec-

tions referred to to compensate persons incidentally injured by a change in the established grade of a public street.

The judgment of the district court must be affirmed.

VALENTINE, J., concurring.

BREWER, J., specially concurring: The great weight of authority seems to be in accord with the foregoing opinion; but if the question were a new one, I confess that there is much in the views expressed by the Ohio supreme court, which commends itself to my ideas of justice.