No. 38,458

THE ATCHISON ICE COMPANY, INC., a corporation, *Appellee*, v. CITY OF ATCHISON, KANSAS, a municipal corporation, *Appellant*.

No. 38,459

WILLIAM N. BARNES and MARJORY G. BARNES, *Appellees*, v. CITY OF ATCHISON, KANSAS, a municipal corporation, *Appellant*.

(238 P. 2d 531)

Opinion filed December 8, 1951.

*Steadman Ball*, of Atchison, argued the cause, and *Edmund L. Page*, city attorney, and *J. W. Lowry*, of Atchison, were with him on the briefs for the appellant.

*Karl W. Root*, of Atchison, argued the cause, and *Maurice P. O'Keefe* and *Dolan McKelvy*, both of Atchison, were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: The appeals here considered arise from two separate actions, not consolidated for any purpose, but which involve the same question of law, and are therefore disposed of in one opinion. In each case the plaintiff commenced an action to recover damages for an alleged change of grade of a city street. The city's demurrer to each petition was overruled and the appeals followed.

From each petition it is deducible that many years ago the city passed an ordinance establishing the grade of Fifth Street at all points involved and improved the street at the grade established. Fifth Street runs north and south. In 1948 the city enacted an ordinance appointing the state highway commission as its agent to secure the benefits of certain federal legislation for the construction of the viaduct along Fifth Street, a contract was let and the viaduct

built. It is sufficient here to state that Fifth Street is eighty feet wide. The north end of the viaduct is about ten feet south of the south line of Commercial Street and the viaduct extends south over certain east and west streets including Utah and Main Streets and over certain railroad tracks, the location of the extreme south end of the viaduct being immaterial here. The viaduct is located in the center of Fifth Street, and is about thirty-six feet wide, and except at points of entrance and exit the floor of the viaduct is supported on concrete pillars or piers which are about thirty feet apart between the outside diameters east and west and about 120 feet apart north and south along the course of the viaduct. Between the outside edges of the north approach and the curb lines of the street, there is a space about twelve feet wide where vehicles can proceed along the original grade of the street, and to the south a slightly greater width between the pillars or piers and the curb.

As far as need be noted, in case No. 38,458, the plaintiff alleged ownership of real property on which were buildings used by it in its business, and located on the east side of Fifth Street, north of Utah Avenue and south of the railroad tracks to the north; that traffic on Fifth Street over the railroad tracks between Main and Utah Streets had been closed, and access to plaintiff's property could be had only from Utah Avenue, Fifth Street being a "dead-end" street from Utah Avenue north to the tracks, the facts relative to establishment of the original grade, the construction of the viaduct, and that the change of grade had interfered with plaintiff's ingress and egress to and from its property and that the viaduct, resting on piers with its floor over twenty feet above the former established grade, diminished plaintiff's light and air, increased the dust and filth thrown on its property and decreased the value thereof in the sum of $50,000; that the city had never had any proceedings under the statutes for the award of damages by reason of change of grade, and that plaintiff had filed a claim therefor with the city, a copy being attached, and that the claim was rejected. Plaintiff prayed judgment for $50,000.

In case No. 38,459, plaintiffs alleged their ownership of real estate on the east side of Fifth Street immediately south of Commercial Street on which they had a two-story building used for a retail store and living quarters, the facts as to establishment of the original grade and the construction of the viaduct and the effect on Fifth Street, and by reason thereof their ingress and egress

to and from Fifth Street was interfered with, their light and air had been diminished, increased amounts of dirt were thrown on their property, noxious noises and odors permeated their building; that the city had never had any statutory proceedings to fix damages; that they had been damaged in the sum of $5,000 and had filed a claim with the city which had been rejected, and they prayed judgment for that amount.

Although stated in appellant's abstracts and briefs with particularity as to the facts in each case, the question involved is whether the building of a viaduct thirty-six feet wide in the center of an eighty-foot street constitutes a change of grade where a sufficient portion of the original street is left at the established grade on each side of the viaduct so that abutting owners have access to their property, and when the abutting owner does not claim that access to his property from another adjoining street is not cut off but does claim that the street on which the viaduct was built furnished him his most convenient means of access and the viaduct interfered therewith.

Appellant calls attention to the rule that where a city is authorized to change the grade of a street it is not liable to an abutting property owner for damages in the absence of a constitutional or statutory provision making it liable (*Methodist Episcopal Church v. City of Wyandotte,* 31 Kan. 721, 3 Pac. 527, and *Glover v. State Highway Commission,* 147 Kan. 279, 77 P. 2d 189) and to the fact that there is such a statute applicable to it (G. S. 1949, 13-1019, *et seq.*), but it contends that the erection of the present viaduct did not result in any change of grade. It states the specific question is one of first impression in this state, although the rules of law and public policy by which it must be determined have long been in effect and compel a decision in its favor. It argues that an abutting owner has no vested interest in the maintenance of a public way beyond his right to have reasonable means of ingress to and egress from his property (*Foster v. City of Topeka,* 112 Kan. 253, 210 Pac. 341); that cities of the first class are given the right to vacate any street or alley or portion thereof (G. S. 1949, 13-443) and that such cities are constantly regulating the streets by installing traffic signs, re-routing traffic, regulating parking and in general exercising governmental control over the streets and that the courts may take judicial notice thereof (*Johnson v. Funk,* 132 Kan. 793, 297 Pac. 670) and, inferentially that abutting owners have no cause of action on ac-

count thereof, and it argues that when the entire width of the street is left accessible at the original established grade, an abutting owner cannot be said to have been damaged by a viaduct which does not deny him that access. Citing railroad cases (*K. N. & D. Rly. Co. v. Cuykendall*, 42 Kan. 234, 21 Pac. 1051, 16 Am. St. Rep. 479, and *Sharp v. The El Dorado & S. F. Rly. Co.*, 123 Kan. 397, 255 Pac. 1118) both dealing with construction of grades as restricting right of ingress and egress, where it was held that damages to an abutting owner are only recoverable where ingress and egress are denied, it argues that an abutting owner is entitled only to reasonable ingress to and egress from his property, that the instant petitions disclose that the owners do have ingress and egress and therefore their petitions fail to state a cause of action.

However persuasive the appellant's argument may be, the fact remains that the legislature saw fit to give the city the power to establish the grade of its street, and provided if that established grade be changed, for the assessment of damages caused to property owners by reason of such change (G. S. 1949, 13-1019, *et seq.*). The question is not whether a means of ingress and egress remains in the appellees, although that may enter into the amount of damage, but whether, under the statute, there has been a change of grade, bringing the statute into action; or stated another way, do the admitted facts show there was a change of grade so that appellees may prove and recover their damages, if any? The failure of the city to follow the course of procedure outlined in the last cited statutes, will not preclude the owners from maintaining these actions (*City of Topeka v. Sells*, 48 Kan. 520, 29 Pac. 604).

No decision of this court is cited by either party which deals with the precise question whether a viaduct occupying only a part of the street may be said to result in a change of grade, but authority from other jurisdictions is not wanting. It may be observed first that with references to viaducts generally it has been held in many jurisdictions that the erection over a street of an elevated viaduct, intended for general use, is a legitimate street improvement equivalent to a change of grade. See e. g. *Sauer v. New York*, 206 U. S. 536, 544, 27 S. Ct. 686, 688, 51 L. Ed. 1176; *Menut & Parks Co. v. St. Johnsbury*, 114 Vt. 41, Syl. ¶ 4, 39 A. 2d 342, 156 A. L. R. 404; Dillon, Municipal Corporations, 5th Ed., Vol. 4, p. 2930, and cases cited; 63 C. J. S. 972; 18 Am. Jur. 831. And see our statutes authorizing cities of the first class, of which Atchison is one, to require railroad companies to erect viaducts over streets, and to fix

the width and height of any such viaduct and the approaches thereto, and where it is provided that the proceedings for determining damages arising from the construction shall be the same as provided by law for the purpose of determining damages to property owners by reason of the change in grade of a street, the damages to be paid by the railroad company. G. S. 1949, 12-1633 and 13-1903.

With respect to viaducts which occupy only a part of the width of the street, we note the following decisions and authorities.

In a case decided in 1879, *Stickford v. City of St. Louis,* 7 Mo. App. 217 (Aff. 75 Mo. 309), it was held that charter provisions for damages from change of grade of a street applied to a case where the change did not extend to the whole width of the roadbed.

In *People v. Hennessy,* 142 N. Y. S. 839, 157 App. Div. 786, it was held:

"Where a municipality established a bridge under a statute requiring it to be higher than the old bridge, and for that reason built a viaduct over the street approaching the bridge, the grade of the street was changed, although the viaduct did not cover its whole surface, but left a portion at the original grade." (Syl. ¶ 1.)

We shall not review at length the opinion in *People ex rel. Crane v. Ormond,* 221 N. Y. 283, 116 N. E. 993, where the construction of a viaduct did not change the surface of the street except by the presence of columns supporting the viaduct, and the question was whether a change of grade resulted, the court, in answering certain certified questions, said, in part:

"Wholly independent of the authorities upon the subject we are of the opinion that it did. It is true that the original surface of the street was not altered except by the erection of the pillars. It is true that pedestrians and vehicles may still pass over it. But practically and substantially One Hundred and Fifty-fifth street as now used passes on a level fifty feet or more above the Sauer property. This is the level adopted by travel east and west. To the street so used access was denied to Mr. Sauer. Necessarily his damage was great." (1. c. 287.)

*Liddick v. Council Bluffs,* 232 Iowa, 197, 5 N. W. 2d 361, was an action to enjoin construction of a viaduct, the plans for which showed that when constructed, it would not occupy the entire street. The court held:

"Where a street has been duly established and it is proposed to erect a viaduct longitudinally over said street, with cement columns in said street, and where such construction will interfere with the rights of abutting property owners, it is *held* that such construction cannot be made without compensation first being made to said owners." (Syl. ¶ 1.)

In *City of Ashland v. Queen*, 254 Ky. 329, 71 S. W. 2d 650, the actions considered were for damages growing out of the construction of a viaduct by the state highway commission under an agreement between it, the county, the city and two railroad companies, the abutting property owners contending that the erection of a viaduct thirty feet wide leaving roadways on either side, where the inclines were solid masonry and the viaduct was built on steel piers resting on concrete bases, constituted a change of grade. Without further detail of the facts, nor any review of the authorities cited, which include matters not before us, we note that the court concluded that the fact the floor of the highway was elevated on trestle work did not change the structure from the nature of a street and that compensation could be recovered from the city for damages resulting to adjacent property by regrading of an established street or by making and using improvement for public purposes.

In McQuillin, Municipal Corporations, 3d Ed., vol. 13, p. 614, in discussing the nature and extent of the change of grade, it is said:

"A change need not be of the whole width of the street, or of the whole part previously wrought, in order to entitle an abutting owner to damages. A substantial change of a part is sufficient."

In an annotation in 156 A. L. R. 416, on what physical construction amounts to a change of grade within a statute relating to award of damages, it is said in subdivision IV, page 418, that a change of grade of the street need not be a physical change of the entire width, anymore than it need not affect the entire length, and that a change of grade of a portion of the width of the street in front of the land of the owner comes within the statutory provision. Attention is directed to the cases therein cited as well as those cited in subdivision V, and not mentioned above.

Both parties comment on our decisions in *The State v. Mo. Pac. Rly. Co.*, 33 Kan. 176, 5 Pac. 772, and *Parker v. City of Atchison*, 46 Kan. 14, 26 Pac. 435, 30 Am. St. Rep. 845, but in our opinion what is there said is too tenuous to be the basis for our determination of the problem presented by these appeals and those decisions will not be discussed. Other decisions cited by each party and not mentioned herein have been examined but in our opinion they are not controlling either directly or by analogy.

In our opinion the trial court did not err in overruling the city's demurrer to the plaintiffs' petitions, and its rulings and judgments are affirmed.