No. 45,457

Samuel E. Lux, III and Geraldine Lux, *Appellants,* v. The City of Topeka, Kansas, a Municipal Corporation, *Appellee.*

(460 P. 2d 541)

Opinion filed November 8, 1969.

*James C. Wright,* of Topeka, argued the cause, and *Warren W. Shaw, William Hergenreter* and *Carl W. Quarnstrom,* all of Topeka, were with him on the brief for the appellants.

*Ken F. Crockett,* Assistant City Attorney, argued the cause, and *James P. Buchele,* City Attorney, was with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action for permanent damage to plaintiffs' property caused by a change of grade at Kansas Avenue, between Crane and First Streets in the City of Topeka, by the construction of an approach to the new bridge across the Kansas River at Kansas Avenue. The trial court sustained the defendant City's motion for summary judgment on the ground the plaintiffs failed to comply with the provisions of K. S. A. 12-105. Appeal has been duly perfected.

The only question presented on appeal is whether the plaintiffs were required to give the three-month notice required in K. S. A. 12-105 as a condition precedent to sustaining an action.

The facts giving rise to this action are not in dispute. They are established by the pleadings, stipulations, an affidavit and an exhibit.

By ordinance No. 624 the City of Topeka (defendant-appellee) established the grade elevation at the Kansas Avenue intersections

of Crane and First Streets. There has been no amendment or change in the grade or the ordinance establishing grades at these intersections.

By reason of the construction of flood control levies along the south bank of the Kansas River, it was necessary to increase the elevation of the new bridge and the south approach on Kansas Avenue leading to the new bridge.

Barricades were constructed in front of the property of Samuel E. Lux, III and Geraldine Lux (plaintiffs-appellants) on the 12th day of October, 1965; construction on the south approach to the bridge was commenced September 13, 1965; the construction was completed and the new bridge opened for traffic on April 30, 1967; the appellants filed a written claim for damages with the City on March 29, 1967, and suit was filed on May 19, 1967, claiming $75,000 damages to their property by reason of the construction which changed the grade of Kansas Avenue in front of their property.

In sustaining the City's motion for summary judgment the trial court held the appellants failed to comply with the provisions of K. S. A. 12-105. The trial court found the date of injury was no later than October 12, 1965, when the barricades were constructed and the street abutting the appellants' property was torn up. The trial court held the statute applicable; that there was a permanent appropriation for the taking of a property right; that the claim filed by the appellants was not timely made; and that the statute expressly prohibits the maintenance of an action without filing the claim within the time required.

K. S. A. 12-105, insofar as it is material herein, provides:

"No action shall be maintained by any person or corporation against any city on account of injury to person or property unless the person or corporation injured shall within three (3) months thereafter and prior to the bringing of the suit file with the city clerk a written statement, giving the time and place of the happening of the accident or injury received and the circumstances relating thereto: . . ."

The appellants concede in an action for negligence against a municipality a claim for damages must be served on the City within three months after the happening of the accident or event which caused the injury or damage. The appellants contend, however, there was no necessity for the filing of a claim in this case because their claim is in the nature of an inverse condemnation claim and not one for negligence. This point is well taken.

The basis of the appellants' claim is the statutory duty of a city to pay damages to an abutting property owner when the city changes a previously established grade on a street.

K. S. A. 13-1019 provides:

"The governing body may by ordinance establish the grade of any street or alley, and when the grade of any street or alley shall have been so established, said grade shall not be changed until a resolution shall have been passed by a three-fourths vote of all the councilmen elected declaring it necessary to change said grade."

K. S. A. 13-1020 provides:

"When such resolution is passed declaring it necessary to change any grade, the governing body shall proceed pursuant to the procedure required for the exercise of the power of eminent domain in accordance with sections 1 to 16 [26-501 to 26-516], inclusive, of this act."

In the instant case the City failed to comply with these statutes.

Before the turn of the century the Kansas Supreme Court construed the provisions of ordinance No. 624 establishing the grade on Kansas Avenue and discussed the duty of the City of Topeka when it changes an established grade in a case entitled *City of Topeka v. Sells*, 48 Kan. 520, 29 Pac. 604 (1892).

The court in *Sells* said the requirements of the statute (now appearing as K. S. A. 13-1019 and 13-1020) in plain terms cast the duty upon the City of making a proper appraisement of damages; and that such duty was a condition precedent to the exercise of the right to change the grade. The court held the statute confers a positive right to such damages, saying:

". . . The statute was passed for the benefit of the city, the operative machinery of the law was given into the custody of the city the better to enable it to accomplish the purposes of the statute, and the city authorities cannot openly omit to do the things required of them and then be protected against all claims for damages that arise out of their own neglect of duty. We think this action is properly brought and can be successfully maintained. . . . (pp. 532, 533.)

The subject was pursued in *Atchison Ice Co. v. City of Atchison*, 172 Kan. 94, 238 P. 2d 531. There a viaduct was constructed resting on piers with its floor over twenty feet above the former established grade, but the change in grade did not occupy the entire street in front of the plaintiff's property, as here. In an exhaustive opinion the court held G. S. 1949, 13-1019, *et seq.*, applicable, saying:

". . . The question is not whether a means of ingress and egress remains in the appellees, although that may enter into the amount of damage,

but whether, under the statute, there has been a change of grade, bringing the statute into action; or stated another way, do the admitted facts show there was a change of grade so that appellees may prove and recover their damages, if any? The failure of the city to follow the course of procedure outlined in the last cited statutes, will not preclude the owners from maintaining these actions (*City of Topeka v. Sells,* 48 Kan. 520, 29 Pac. 604)." (p. 97.)

In *Brock v. State Highway Commission,* 195 Kan. 361, 404 P. 2d 934, it was claimed the state highway commission had taken the right of access to a controlled access highway without obtaining the right of access by condemnation or otherwise. There the court held, where the right of eminent domain had not been exercised by the state highway commission and an abutting property owner was aggrieved because he felt that his access to a controlled highway had been unreasonably restricted, the *remedy* was by way of an action for damages in the nature of a suit on an *implied contract.* Such an action may be characterized as an inverse condemnation action.

The situation in the instant case is analogous because the City did not follow the statutory mandate to determine the damages sustained by the appellants prior to the change in grade on Kansas Avenue as it was required to do under the condemnation law.

Accordingly, we hold the action filed by the appellants herein is in the nature of a suit on an *implied contract.*

This court has recently held in *Stauffer v. City of Topeka,* 200 Kan. 287, 436 P. 2d 980, the provisions of K. S. A. 12-105, requiring the filing of a written statement of injury to person or property as a prerequisite to the bringing of an action against a city, have no application to an action for breach of a written contract. In the opinion it was said the statute had "application only to actions for *injury* to persons or property, *i.e.,* tort actions." (p. 289.)

In his work on "Municipal Law" (1957) Charles S. Rhyne states in § 17-20:

"The constitutional provision requiring the payment of just compensation is self-executing and a landowner may enforce his constitutional right to compensation in common law action. And the filing of a claim by an owner against the city is not necessary in an eminent domain proceeding instituted by the city." (p. 409.)

The author of "Municipal Law," above, discusses the necessity of filing a written claim and states in § 30-32:

". . . Statutory notice required for negligence actions is not necessary . . . for a suit based on implied contract rather than tort; . . ." (p. 788.)

No reason exists under the circumstances here presented why an action based upon a written contract should be treated differently from one based upon an implied contract. We therefore hold the appellants were not required in the instant case to give the City the three-month notice provided in K. S. A. 12-105 because their action is based upon an implied contract calling for the payment of damages as the City was directed to do by the provisions of K. S. A. 13-1019, 13-1020 and K. S. A. 26-501, *et seq.*

The dictum upon which the appellee relies in *Wildin v. City of Hutchinson,* 177 Kan. 671, 282 P. 2d 377, to the contrary, is disapproved. (See *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625.)

The judgment of the lower court is reversed.