No. 66,655

ADMIRE BANK & TRUST, *Appellant*, v. CITY OF EMPORIA, KANSAS, *Appellee*.

(829 P.2d 578)

Opinion filed April 10, 1992.

*Mark E. Jones*, of Polsinelli, White, Vardeman & Shalton, of Overland Park, argued the cause and was on the briefs for appellant.

*Dale W. Bell*, of Helbert, Bell & Smith, Chartered, of Emporia, argued the cause, and *James R. Campbell*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This dispute arises out of a party wall demolition. The parties do not discuss whether there was or is a party wall agreement or a right by prescription.

The trial court granted judgment on the pleadings in favor of the defendant, City of Emporia (City), and against the plaintiff, Admire Bank & Trust (Bank). Judgment was granted on the basis that the statute of limitations had run.

The trial court should have considered the motion for judgment on the pleadings as a motion for summary judgment. Thus, the issue becomes whether the trial court erred in granting summary judgment to the City.

The Bank filed a petition in July 1990, alleging that the buildings at 514 and 516 Commercial in Emporia, Kansas, shared a "party wall" and that the City demolished the building at 516 Commercial. The Bank claimed the City was a common owner of the party wall when it was demolished and had a duty to use reasonable care to protect the structural integrity of the party wall and to avoid damage to the building at 514 Commercial, which the Bank owned.

The City answered that it was the City's "understanding" that the building at 516 Commercial was demolished in approximately 1970.

Most of the rest of the facts are taken from briefs filed with the trial court and from statements of counsel during argument on the motion for judgment on the pleadings.

The Bank acquired the properties at 510 and 514 Commercial in January 1990, after the property at 516 Commercial had been demolished. The Bank claims it does not know when the building at 516 Commercial was demolished, but claims one of its employees "thinks" it may have been within the last 10 years. The Bank also maintains that after it acquired the property, it received notice that the City was condemning the buildings at 510 and 514 Commercial, which were adjoined, because of structural integrity problems. The City denies it ever gave notice it was ordering the property to be demolished.

After the buildings at 510 and 514 Commercial were demolished, the Bank filed suit, alleging that the City's negligence in demolishing the building at 516 Commercial caused damage to the Bank's buildings at 510 and 514 Commercial. According to the Bank, the City "failed to leave the property at 514 Commercial with any lateral support"; "failed to close the stone caps on the parapet walls, allowing water to get into the north wall and causing the wall to crack and mortar to be washed out"; and further "failed to protect structures adjacent to the property owned by [the Bank] at 514 Commercial." The Bank claimed that this damage necessitated demolition of the buildings. The Bank seeks compensation for the costs incurred in removing the buildings at 510 and 514 Commercial, for the diminution in value of the property, and for the loss of rent for a reasonable period of time.

The City filed a motion for judgment on the pleadings, pursuant to K.S.A. 1991 Supp. 60-212(c). The City claimed the applicable statute of limitations, K.S.A 1991 Supp. 60-513, barred the Bank's claim because the building at 516 Commercial was removed in approximately 1970.

In its memorandum decision, the trial court specifically referred to the City's motion as a motion for judgment on the pleadings.

The trial court also stated it accepted 1970 as the date the building at 516 Commercial was demolished.

A motion for judgment on the pleadings is governed by K.S.A. 1991 Supp. 60-212(c).

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256 and amendments thereto, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion."

A review of the record reveals the trial court considered matters outside the pleadings to reach its conclusion.

In its answer, the City stated it *understood* the date of demolition was "approximately 1970." The City did not explain the basis for its understanding nor support it with any evidence. In its motion for judgment on the pleadings, the City stated the pleadings showed the building was demolished in approximately 1970. A hearing on the motion was scheduled for September 7, 1990. The Bank obtained a continuance in order to discover the demolition date, and the hearing was rescheduled for October 26, 1990.

The Bank filed its response to the City's motion on October 24, 1990, and claimed a factual dispute existed whether the building at 516 Commercial was demolished in 1970. The Bank based its claim on the fact it did not know when the building was demolished. The Bank also noted that the City was not certain of the date because the City stated the demolition occurred in *approximately* 1970.

At the hearing on October 26, the trial court made the following observation: "So the date of the tearing down and the damage to the building would be the date that the Court would be interested in, but that will have to be tied down some way or other. Is there not some evidence somewhere to tie this date down?" In response, the City stated:

"Well, Your Honor, we have provided through discovery some things that do tie it down as far as when the city acquired the property which was in early 1970. I also just procured today an affidavit from [a] representative of KP&L which indicated they installed a freestanding streetlight on the— on July 10, 1970, which I believe is a pretty good indication that the building

must have been torn down at that time. The only other thing we've been able to come up with so far is in the minutes of December '69 meeting when it was offered which again was provided through discovery was the idea that it would be boughten [*sic*] and then torn down and the date of the acquisition was December 31, '69."

The affidavit and the meeting minutes were never entered into evidence and are not a part of the record, nor is any discovery in the record before us.

At the hearing, the Bank argued the date the building was demolished was in dispute, but offered no evidence to counteract the City's claims. Toward the close of the hearing, the court asked the Bank whether it was suggesting that demolition occurred within the past ten years. The Bank's counsel replied:

"Your Honor, we don't know. I mean I have been told that by the people at the bank that they do not believe it was that long ago. But we have not been able to find any definitive information as of yet as to when it occurred. So I can't say. But we think it was in the last ten years, Your Honor."

The trial court issued its memorandum decision and made the following findings:

"[The Bank] sought and obtained a continuance of the hearing in order to ascertain the date of demolition. At this time there is no evidence of when demolition took place other than 'approximately 1970.'

. . . .

"The Court finds that [the City] has alleged through these proceedings that the date of tearing down the building was 'approximately 1970'. [The Bank] has pursued this question with discovery and merely argues [it doesn't] know when it was torn down. The Court accepts the date of 1970."

As illustrated by the hearing and the memorandum decision, the trial court considered matters outside the pleadings. The trial court erred in not treating the motion as a motion for summary judgment. "The judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision." *State v. Wilburn*, 249 Kan. 678, Syl. ¶ 5, 822 P.2d 609 (1991); see *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, Syl. ¶ 6, 806 P.2d 997 (1991). Thus, if the trial court's granting of the City's motion withstands application of summary judgment standards, the trial court's decision will be upheld on appeal.

The Bank argues it was not given a reasonable opportunity to present pertinent evidence. K.S.A 1991 Supp. 60-212(c) requires

that in the event a motion for judgment on the pleadings is converted to a summary judgment motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." At the hearing on October 26, 1990, the Bank claimed that the motion for judgment on the pleadings had been turned into a motion for summary judgment. The Bank requested that it be allowed time to conduct limited discovery concerning the disputed demolition date.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 1991 Supp. 60-256(c).

"The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal, we read the record in the light most favorable to the party who defended against the motion for summary judgment, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, Syl. ¶ 1, 820 P.2d 390 (1991).

The trial court found no genuine issues concerning material facts that precluded granting the City's motion. The Bank maintains that the trial court's finding is in error because the Bank disputed the demolition date.

Here, the City did not file a statement of uncontroverted facts and offered no evidence concerning when the building was demolished. The dispositive facts are in issue and unsubstantiated by either the record or the pleadings. While we understand the trial court's frustration in this case, the record does not show the trial court had any evidence before it that would support an approximate date the building was torn down.

"The statute of limitations is an affirmative defense and the burden of pleading and proving its applicability rests on the defendant." *O'Donnell v. Fletcher*, 9 Kan. App. 2d 491, Syl. ¶ 1, 681 P.2d 1074 (1984). See *Tabor v. Lederer*, 205 Kan. 746, 748, 472 P.2d 209 (1970). The Bank did not plead any dates, and the City offered no evidence and did not file a statement of uncontroverted facts. The date of substantial injury was never established. A factual issue remains (when the statute of limitations

commences to run), and the trial court erred in granting summary judgment on the record before it.

Both parties agree that the statute of limitations in section 60-513 of the Kansas Statutes Annotated governs. At issue is whether the preamendment statute (K.S.A. 60-513) or the 1987 amendment (now found at K.S.A. 1991 Supp. 60-513[b], [d]) applies.

K.S.A. 60-513(b), prior to the 1987 amendment, provided:

"Except as provided in subsection (c) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

After analyzing the preamendment law, this court, in *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, held:

"Under K.S.A. 60-513(b), the two-year statute of limitations for a tort action commences on the date of substantial injury. A cause of action in tort does not accrue until there is substantial injury resulting from a breach of duty imposed by law."

"The ten-year statute of limitations provided in K.S.A. 60-513(b) applies only when an injury is sustained but is not reasonably ascertainable until a later date. The ten-year limitation is merely a limit on the extension of the two-year limitation when an injury is not immediately ascertainable."

"Under K.S.A. 60-513(b), a wrongful act alone does not give rise to a cause of action or start the running of the statute of limitations. Rather, when an act occurs which causes substantial injury at a date later than the wrongful act, both the two-year and ten-year statutes are triggered upon ascertainment of the substantial injury. If the injury is known but the facts of such injury are not reasonably ascertainable until later, K.S.A. 60-513(b) bars an action thereon unless the facts of injury are ascertained and action commenced within ten years of the substantial injury." 249 Kan. 307, Syl. ¶¶ 3-5.

The 1987 legislature, in an era of tort reform, amended K.S.A. 60-513(b) to adhere to the language suggested in *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, 519 P.2d 661 (1974). In *Ruthrauff*, a gas explosion and fire destroyed the Smiths' residence and caused the death of Mrs. Smith. The administratrix of Mrs. Smith's estate filed suit against the building and plumbing contractors within 2 years of the explosion, but over 10 years

after the construction of the house. The defendants filed for summary judgment. The trial court granted the motion, based upon its interpretation of the statute of limitations that "[n]o cause of action can arise if more than ten years have elapsed since the alleged wrongful act." 214 Kan. at 187.

This court reversed the trial court, reasoning:

"Under K.S.A. 60-510 this primary 2 year period [in 60-513(a)] is not to commence until each cause of action shall accrue, *i.e.,* when substantial injury results. The 10 year provision is secondary and speaks to this primary period when it states 'but in *no event shall the period be extended* more than ten (10) years beyond the time of the act giving rise to the cause of action.' The 'period' referred to would appear to be the 'period of limitation' mentioned immediately preceding and this refers to the primary 2 year period provided for in the statute. This would indicate to us that the legislature did not intend to place a restriction on the primary 2 year period which commences when the action accrues. It is merely a limitation on the extension of the 2 year period when substantial injury is not immediately ascertainable. If the legislature intended otherwise it could have clearly expressed itself by saying that in no event shall *an action be commenced* more than 10 years beyond the time of the act giving rise to the cause of action. This they did not do. Accordingly we hold that the last clause in this statute, which states 'but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action', does not affect or limit the primary 2 year period for bringing an action where the fact of substantial injury is immediately apparent as in the case of an explosion and resulting fire." 214 Kan. at 191.

K.S.A. 1991 Supp. 60-513, which incorporates the 1987 amendment, reads:

"(b) Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.* (Emphasis added.)

. . . .

"(d) The provisions of this section as it was constituted prior to July 1, 1987, shall continue in force and effect for a period of two years from that date with respect to any act giving rise to a cause of action occurring prior to that date."

Relying upon *Gilger,* the Bank argues that the preamendment statute governs its cause of action because the 1987 amendment

has no effect on cases in which the original wrongful act occurred prior to July 1, 1987. In our opinion, it misinterprets *Gilger*. In dicta, the *Gilger* court commented that "[i]n 1987 the legislature also recognized the rule of *Ruthrauff* by amending K.S.A. 60-513(b) to conform to the language suggested in *Ruthrauff* and continued the *Ruthrauff* rule in force until July 1, 1989." 249 Kan. at 318. *Gilger* involved a preamendment application of K.S.A. 60-513: "Appellants filed their action in 1987, and the ten-year limitation, therefore, does not bar prosecution in this case." 249 Kan. at 318-19.

Also instructive is *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 631 P.2d 222 (1981), in which this court discussed the 1976 amendment to K.S.A. 1975 Supp. 60-513 (codified in subsections [c], [d]). The 1976 amendment, in new subsection (c), reduced the "discovery period" of the statute of limitations in medical malpractice actions from 10 years to 4 years and redefined when such actions accrue by following the suggested language in *Ruthrauff*. New subsection (d) "granted a grace period of two years from the effective date of the 1976 amendments (July 1, 1976) during which existing causes of action might be filed. After that date, the 1976 act would be applicable and such actions would be controlled by the four-year limitation." 230 Kan. at 120.

*Stephens* is on point. The amendment construed in *Stephens* and the amendment at issue here are, for our purposes, sufficiently similar. In *Stephens*, the plaintiff filed her cause of action in 1979, over a year past the two-year grace period. Here, The Bank filed its cause of action in 1990, a year past the two-year grace period. The *Stephens* plaintiff argued that the 1976 amendments did not govern her cause of action.

"The thrust of [plaintiff's] argument is essentially this: Subsection (d) of 60-513 does not apply to the plaintiff's cause of action, because section (d) is applicable only to acts giving rise to a cause of action *which actually accrued* prior to the effective date of the amendments, July 1, 1976. Here, plaintiff did not discover the improper placement of the IUD, nor did she suffer substantial injuries, until the hysterectomy was performed in 1979. It was only then that plaintiff's cause of action accrued. The negligent act of defendants was not an 'act giving rise to a cause of action occurring prior to the effective date of [the] act' because no cause of action had yet accrued at that time. Hence, the 1976 amendments did not bar her cause of action. Stated simply, plaintiff contends that what the legislature did intend was

for K.S.A. 60-513(d) to apply to situations where *both* the negligent act complained of and the accrual of the cause of action took place prior to July 1, 1976. According to plaintiff, this was done so that causes of action which had not already *accrued* would still have the two-year period of limitation from the date the fact of injury was reasonably ascertainable as provided under the old statute." 230 Kan. at 120-21.

## In response, this court stated:

"[I]t must be emphasized at the outset that the plaintiff does not dispute that the legislature has the power to shorten an existing statute of limitations, provided a reasonable time is given for a person having an existing cause of action to commence an action before the bar takes effect. This principle of law was stated in *Milbourne v. Kelley,* 93 Kan. 753, 145 Pac. 816 (1915). Likewise, the plaintiff does not argue the unreasonableness of the 'two year grace period' provided by K.S.A. 60-513(d), but urges that the language in that section did not express an unequivocal intent that the 1976 amendments should have retrospective operation. We find no merit to this contention, since K.S.A. 60-513(d) clearly expresses the legislative intent to bar certain actions after the grace period, where injuries occurred prior to the effective date of the act." 230 Kan. at 120.

## This court adopted the reasoning of the trial court, quoting:

" 'Defendants tax plaintiff with trying to change a critical term in paragraph (d) by saying that the limitation of (d) upon actions for injuries resulting from acts taking place prior to the effective date of the statute applies only to the causes which *accrued* (the injury was discovered) prior to the effective date, when in fact the statute speaks of acts *occurring* prior to the effective date. . . . The provisions of the statute which controlled prior to the effective date of the amendment . . . remained applicable for a period of two years from the effective date of the amendment with respect to any act upon which a cause is predicated which occurred prior to that effective date. "With respect to any act," clearly means that the date to be used for calculation of the period of grace is the date of the act causing the injury and not the date of the accrual upon ascertainment of injury. If plaintiff had a cause not accrued and thus not barred at the time of the effective date of the act, she could have the benefit of the longer period for two years beyond the effective date of the act, but then the period of grace expired. If the act giving rise to the cause of action (the negligence) occurred on any date within ten years of July 1, 1978, she could institute her action under the prior limitation, but once the grace period passed, the absolute limit of four years applied.'

. . . .

" 'It is presumed the legislature had and acted with full knowledge and information as to the subject matter of the statute, as to prior and existing law and legislation on the subject of the statute and as to the judicial

decisions with respect to such prior and existing law and legislation.' " 230 Kan. at 121-23.

The 1987 amendment to K.S.A. 60-513 governs the Bank's ·cause of action. The amended statute still contains the substantial injury test: If the original wrongful act causes substantial injury, the two-year statute of limitations begins to run at the time of the original act. If substantial injury does not occur at the time of the original act but occurs later, then the two-year statute of limitations begins to run when the injury is reasonably ascertainable. Both prongs of the substantial injury test are subject to the ten-year "discovery" rule. The plain language of the statute and the applicable case law require that after July 1, 1989, a negligence action must be brought within 10 years of the original wrongful act or the action is barred.

Until the trial court has evidence before it concerning when the building at 516 Commercial was demolished, the trial court cannot determine when the statute of limitations commenced to run. The trial court is aware of *Lambert v. City of Emporia*, 5 Kan. App. 2d 343, Syl. ¶ 1, 616 P.2d 1080 (1980), in which the Court of Appeals reviewed party wall rules and held:

"The owner of a building sharing a party wall may remove his building without liability to the adjoining owner so long as he gives notice of the removal to the adjoining owner and uses reasonable care to protect the structural integrity of the party wall and avoid damage to the adjoining owner's building resulting from the removal. This rule applies even though removal of the building leaves the party wall exposed to the elements or unsightly."

The Bank contends the statute of limitations should not commence until the Bank acquired the property in 1990 because it could not maintain a legal action prior to owning the property. In support, the Bank cites *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986), in which this court stated:

"In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion."

The Bank's contention, while not incorrect, only tells part of the story. In *State, ex rel., v. Masterson*, 221 Kan. 540, 547,

561 P.2d 796 (1977), this court discussed the interplay between the accrual of a cause of action and statutes of limitations: "Under the provisions of K.S.A. 60-510 an action . . . can only be commenced within the period prescribed by the applicable statute after the cause of action shall have accrued." K.S.A. 60-510 provides that "[c]ivil actions, other than for the recovery of real property, can only be commenced within the period prescribed in the following sections of this article, after the cause of action shall have accrued."

The Bank maintains that because the trial court barred its claim before the claim ever arose, the Bank was denied its day in court. This, the Bank claims, is a violation of due process under the 14th Amendment of the United States Constitution.

Two cases dispose of that contention: *Brubaker v. Cavanaugh*, 741 F.2d 318 (10th Cir. 1984), and *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115. In *Brubaker*, the plaintiff raised a due process challenge to the 1976 amendment to K.S.A. 1975 Supp. 60-513. The plaintiff argued that a statute barring a cause of action before all of the action's elements are present violates due process and that a party must be allowed a reasonable time after discovery of the injury to file a cause of action. The Tenth Circuit Court of Appeals rejected the plaintiff's argument, reasoning:

" '[Statutes of limitation] are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. . . . They sometimes expire before a claimant has sustained any injury . . . or before he knows he has sustained an injury . . . . If the limitation period is otherwise reasonable, a claimant is not thereby deprived of his right to due process.' [Citations omitted.]

". . . The state has a legitimate interest in preventing stale claims. The statute provides a reasonable length of time in which to bring suit. Although it works a hardship on particular plaintiffs, there is no violation of due process in its application." 741 F.2d at 321.

In *Stephens*, the 1976 amendment to K.S.A. 1975 Supp. 60-513 survived an equal protection challenge. This court reviewed the policy behind statutes of limitations:

"The courts recognize that statutes of limitations are matters of legislative prerogative, carrying the presumption of constitutional validity unless shown to be unreasonable and arbitrary. [Citations omitted.] The courts have acknowledged that the limitation can be harsh and inequitable in certain circumstances, particularly where the statute of limitations expires before

the injury can be discovered. As stated in *Schwartz v. Heyden Chem. Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, *amended on other grounds* 12 N.Y.2d 1073, *cert. denied* 374 U.S. 808 (1963):

> '[P]erhaps the possibility of feigned cases against unprepared defendants and the difficulties of proof in meritorious cases led to a decision that society is best served by complete repose after a certain number of years even at the sacrifice of a few unfortunate cases.' p. 218.

In *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 89 L. Ed. 1628, 65 S. Ct. 1137 (1945), it was explained:

> 'Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. . . . [Statute of limitations] have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.' p. 314." 230 Kan. at 131-32.

Here, there is a reasonable basis, and it would not be a violation of due process to have the statute of limitations bar the claim prior to the Bank's purchasing the property.

Reversed and remanded for further proceedings.