(873 P.2d 1377)
No. 70,308

ROBERT L. WIGGINS and MICHAEL WHITE, *Appellants,* v.
HOUSING AUTHORITY OF KANSAS CITY, KANSAS, *Appellee.*
Petition for review denied 255 Kan. 1007 (1994).

Opinion filed May 13, 1994.

*Michael R. McIntosh,* of Kansas City, for appellants.

*Frank D. Menghini* and *Terri Savely Bezek,* of McAnany, Van Cleave &
Phillips, P.A., of Kansas City, for appellee.

Before GERNON, P.J., ELLIOTT, J., and DONALD L. WHITE, District Judge Retired, assigned.

ELLIOTT, J.: Robert Wiggins and Michael White sued the Housing Authority of Kansas City, Kansas, for breach of implied employment contract and retaliatory discharge. They appeal the summary judgment granted by the trial court, which concluded that plaintiffs' notices of claims .did not substantially comply with K.S.A. 12-105b.

We affirm in part, reverse in part, and remand.

The facts are deemed uncontroverted because plaintiffs failed to comply with Supreme Court Rule 141(b) (1993 Kan. Ct. R. Annot. 133).

Plaintiffs were terminated on the same day; they appealed to the Housing Authority's Board of Commissioners and were provided a post-termination hearing. That Board determined good cause existed to terminate both plaintiffs. Plaintiffs then sent a notice of claim to the Housing Authority pursuant to K.S.A. 12-105b.

Subsequently, plaintiffs filed suit on two counts—breach of implied employment contract and retaliatory discharge.

K.S.A. 12-105b provides a mandatory uniform procedure for presenting claims against municipalities. Subsection (a) applies to *all* claims a person may have against cities:

"All claims against a municipality must be presented in writing with a full account of the items, and no claim shall be allowed except in accordance with the provisions of this section. A claim may be the usual statement of account of the vendor or party rendering a service or other written statement showing the required information."

Subsection (d) applies *only* to claims giving rise to actions under the Kansas Tort Claims Act:

"Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim."

The plain language of K.S.A. 12-105b requires that persons with tort claims are required to give notice *before* filing suit; however, those with contract claims are *not* required to give notice before filing suit. We reach this conclusion as follows.

First, subsection (a) of K.S.A. 12-105b requires presentation of all claims via a written statement, while subsection (d) requires a written notice of tort claims. Second, K.S.A. 12-105b(a) requires only that all claims be presented in writing. It does not require a claimant to present the statement *before* an action may be filed, as does subsection (d). See *Quigley v. General Motors Corp.*, 647 F. Supp. 656, 660 (D. Kan. 1986).

The history of K.S.A. 12-105b and a related statute also support the interpretation that prior notice is not required for contract claims. Prior to 1979, two statutes existed concerning the presentation of claims against cities. K.S.A. 12-105 required persons having tort claims to give notice *before* filing an action. K.S.A. 12-105b pertained to presenting *all* claims against cities. This statute was not divided into subsections as is the current K.S.A. 12-105b, but the first two sentences of the pre-1979 version were identical to the current K.S.A. 12-105b(a).

The 1979 legislature repealed K.S.A. 12-105 and amended K.S.A. 12-105b, dividing it into subsections. Thus, K.S.A. 12-105b(a) became identical to the current version.

As a result of the repeal of K.S.A. 12-105, we had no statute requiring a tort victim to give a city notice before filing suit. See *Quigley*, 647 F. Supp. at 661.

In 1987, the legislature amended K.S.A. 12-105b to its current version, adding current subsection (d). L. 1987, ch. 353, § 9. Tort victims once again were required to give cities notice before filing suit.

Our Supreme Court's treatment of the pre-1979 statute is also instructive. In *Stauffer v. City of Topeka*, 200 Kan. 287, 436 P.2d 980 (1968), plaintiff did not give the City notice before bringing a contract suit. The court held K.S.A. 12-105 applied only to tort actions. 200 Kan. at 289.

In *Lux v. City of Topeka*, 204 Kan. 179, 460 P.2d 541 (1969), plaintiffs did not give notice before filing a suit for breach of implied contract. The trial court granted defendant summary judgment. The Supreme Court reversed, holding plaintiffs were not required to give prior notice because the action was based on implied contract. 204 Kan. at 183.

After the repeal of K.S.A. 12-105 and before the 1987 amendments, the only reported case we have discovered is *Quigley*,

holding the statute does not apply to tort claims. After the 1987 amendments, the only reported Kansas cases deal with extending the statute of limitations (*Stevenson v. Topeka City Council*, 245 Kan. 425, 781 P.2d 689 [1989]; *Martin v. Board of Johnson County Comm'rs*, 18 Kan. App. 2d 149, 848 P.2d 1000 [1993]) or construing what constitutes substantial compliance under subsection (d) (*Tucking v. Board of Jefferson County Comm'rs*, 14 Kan. App. 2d 442, 796 P.2d 1055, *rev. denied* 246 Kan. 770 [1990]).

The Kansas federal courts, however, have interpreted K.S.A. 12-105b on numerous occasions. The language in *Quigley*, indicating that K.S.A. 12-105b is more suited to contractual matters, has led to a line of cases holding that K.S.A. 12-105b requires prior notice in contract claims as well as tort claims. See, *e.g.*, *U.S.D. No. 457 v. Phifer*, 729 F. Supp. 1298, 1306 (D. Kan. 1990), which held that K.S.A. 12-105b applied to contract claims, relying on the statutory language referring to "all claims."

We hold this interpretation of K.S.A. 12-105b is simply incorrect. The history of K.S.A. 12-105 and K.S.A. 12-105b, the Kansas courts' interpretation of those statutes, and the plain language of K.S.A. 12-105b all indicate that prior notice is not required before contract suits may be filed against cities. Only tort victims are required to present written notice before filing suit.

### The Tort Claims

Each plaintiff alleged a count of retaliatory discharge. The trial court held plaintiffs' notices did not substantially comply with K.S.A. 12-105b. We agree.

In *Tucking*, we held that despite a substantial compliance standard, nonetheless, minimum requirements must be met. 14 Kan. App. 2d at 446. There can only be substantial compliance if plaintiff makes an attempt to state each element required of the notice. 14 Kan. App. 2d at 446-47.

Applying the *Tucking* standard—substantial and minimal compliance—to the present case, plaintiffs' notices complied with every element of K.S.A. 12-105b(d) except the second element, requiring a concise statement of the factual basis of the claim, including date, time, place, and circumstances of the act of which complaint is made.

Nothing in either of plaintiffs' notices referred to any whistle-blowing activity, nor did either notice state that plaintiffs were discharged in retaliation for whistle blowing. The purpose of the statute is to provide the municipality an opportunity to ascertain the incidents attending the events at a time while the occurrence is fresh in the minds of those possessing knowledge of the subject. *Howell v. City of Hutchinson*, 177 Kan. 722, 725-26, 282 P.2d 373 (1955).

Since the Housing Authority had no notice that plaintiffs claimed retaliatory discharge, it could not properly investigate those claims. The trial court did not err in granting defendant's motion for summary judgment on plaintiffs' tort claims for failure to substantially comply with K.S.A. 12-105b.

## The Contract Claims

As previously discussed, plaintiffs were not required to give notice of their contract claims prior to filing suit; thus, the trial court erred in granting summary judgment on the contract claims. See *Quigley*, 647 F. Supp. at 660.

On the other hand, the trial court's judgment will be upheld if correct for another reason. *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, Syl. ¶ 2, 829 P.2d 578 (1992). In other words, if plaintiffs did not have an implied employment contract with the Housing Authority, the summary judgment can be upheld.

Here, the trial court ruled that plaintiffs' response to defendant's motion for summary judgment did not comply with Supreme Court Rule 141(b) and, therefore, deemed defendant's statement of uncontroverted facts to be admitted. As a result, we must consider the question of whether an implied contract existed "based on these uncontroverted facts." *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, 667, 809 P.2d 1216 (1991); see *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 (1987).

The "uncontroverted facts" with respect to Wiggins' contract claim are as follows:

"1. In May 1990, plaintiff Robert Wiggins was employed as Director of Property Management at the Housing Authority of Kansas City, Kansas.

Wiggins reported directly to the Executive Director of the Housing Authority, Nancy Hoag.

. . . .

"25. Wiggins first received the Housing Authority's Personnel Policies after he started his job at the Housing Authority. Wiggins did not negotiate for any of the terms of the Housing Authority's personnel policies.

"26. Wiggins believed he had an implied contract with the Housing Authority because he passed his probationary period and was classified as a 'permanent' employee.

"27. Wiggins does not know if the Housing Authority would have reached a different decision to terminate him had they given him all the hearings he claims he was entitled to receive."

The "uncontroverted facts" relating to White's contract claim are:

"28. In May of 1990, plaintiff Michael White was employed as Assistant Director of Finance at the Housing Authority. White reported directly to the Finance Director of the Housing Authority, Alexander Madrigal.

. . . .

"50. White first received the Housing Authority's personnel policies after he was hired.

"51. White did not negotiate with the Housing Authority prior to or during his employment regarding any of the terms of the Housing Authority's personnel policies.

"52. Wiggins believed he had an implied contract with the Housing Authority because he was classified as a permanent employee and because of the Housing Authority's personnel policies.

"53. During the post-termination hearing, White complained that he was entitled to a formal pre-termination hearing under the Housing Authority's personnel policies.

"54. White does not know if the Housing Authority would have reached a different decision to terminate him had they given him all the hearings he claims he was entitled to receive."

Historically, Kansas has followed the employment-at-will doctrine. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976). Later cases, however, have eroded the doctrine. For example, whether an implied employment contract exists depends on the intent of the parties, which is a question of fact. *Allegri v. Providence-St. Margaret Health Center*, 9 Kan. App. 2d 659, 663, 684 P.2d 1031 (1984).

In *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841 (1987), the court held that summary judgment was inappropriate because the evidence was insufficient to establish whether an implied contract existed as a matter of law. 241 Kan. at 514. See *Brown*

*v. United Methodist Homes for the Aged*, 249 Kan. 124, 138, 815 P.2d 72 (1991).

In the present case, the barren "uncontroverted facts" relating to plaintiffs' contract claims make impossible a determination of whether an implied employment contract existed. Summary judgment was therefore inappropriate.

Affirmed in part, reversed in part, and remanded for further proceedings.